[869 NE2d 636, 838 NYS2d 460]

STATE OF NEW YORK et al., Appellants, v PHILIP MORRIS INCORPORATED et al., Defendants. COMMONWEALTH BRANDS, INC., et al., Nonparty Respondents.

Argued May 1, 2007; decided June 7, 2007

## POINTS OF COUNSEL

*Andrew M. Cuomo, Attorney General,* New York City (*Richard Dearing, Barbara D. Underwood* and *Daniel Smirlock* of counsel), for appellants. I. The Master Settlement Agreement charges courts, not arbitrators, with determining whether a state has diligently enforced its escrow statute. (*Credit Suisse First Boston Corp. v Pitofsky,* 4 NY3d 149; *Matter of R. H. Macy & Co. [National Sleep Prods.],* 39 NY2d 268; *PNE Media v Cistrone,* 294 AD2d 143; *Matter of Smith Barney Shearson v Sacharow,* 91 NY2d 39; *Matter of Weinrott [Carp],* 32 NY2d 190; *Matter of Solkav Solartechnik, G.m.b.H. [Besicorp Group],* 91 NY2d 482; *Matter of Primex Intl. Corp. v Wal-Mart Stores,* 89 NY2d 594; *Matter of United Nations Dev. Corp. v Norkin Plumbing Co.,* 45 NY2d 358; *McDonnell Douglas Fin. Corp. v Pennsylvania Power & Light Co.,* 858 F2d 825; *Gangel v DeGroot,* 41 NY2d 840.) II. The Independent Auditor's failure to apply a Non-Participating Manufacturer adjustment on a provisional basis in March 2004 is not arbitrable. (*Matter of Smith Barney Shearson v Sacharow,* 91 NY2d 39.)

*Kirkland & Ellis LLP,* Chicago, Illinois and New York City (*Stephen R. Patton, Peter A. Bellacosa* and *Douglas G. Smith* of counsel), *DLA Piper Rudnick Gray Cary US LLP,* New York City (*Alexander Shaknes* of counsel), and *Weil, Goshal & Manges LLP* (*Penny P. Reid* of counsel) for Philip Morris Incorporated and others, defendants. I. The Appellate Division correctly held that the plain language of the Master Settlement Agreement requires that the present dispute be arbitrated. (*Collins & Aikman Prods. Co. v Building Sys., Inc.,* 58 F3d 16; *Matter of United Nations Dev. Corp. v Norkin Plumbing Co.,* 45 NY2d 358; *Pearl St. Dev. Corp. v Conduit & Found. Corp.,* 41 NY2d 167; *Fleet Tire Serv. of N. Little Rock v Oliver Rubber,* 118 F3d 619; *Matter of Potoker [Brooklyn Eagle],* 286 App Div 733; *CBA Indus. v Circulation Mgt.,* 179 AD2d 615; *Ross Bros. Constr. Co., Inc. v International Steel Servs., Inc.,* 283 F3d 867; *Coregis Ins. Co. v American Health Found., Inc.,* 241 F3d 123; *CD Partners, LLC v Grizzle,* 424 F3d 795; *Vermont Pure Holdings, Ltd. v Descartes Sys. Group, Inc.,* 140 F Supp 2d 331.) II. The Appellate Division correctly held that the structure of the

Master Settlement Agreement's payment provisions compels arbitration. III. The State of New York does not even purport to overcome the well-settled presumption in favor of arbitration. (*Oldroyd v Elmira Sav. Bank, FSB,* 134 F3d 72; *Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.,* 473 US 614; *AT&T Technologies, Inc. v Communications Workers,* 475 US 643; *Matter of Smith Barney Shearson v Sacharow,* 91 NY2d 39; *Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.,* 37 NY2d 91; *Lynch v United States,* 292 US 571; *C & L Enterprises, Inc. v Citizen Band Potawatomi Indian Tribe of Okla.,* 532 US 411; *Chevron U.S.A. Inc. v Consolidated Edison Co. of N.Y., Inc.,* 872 F2d 534; *Ivax Corp. v B. Braun of Am., Inc.,* 286 F3d 1309; *International Bhd. of Elec. Workers, Local 2188 v Western Elec. Co., Inc.,* 661 F2d 514.)

*Howrey LLP,* Washington, D.C. (*Robert J. Brookhiser* and *Elizabeth B. McCallum* of counsel), and *Leader & Berkon LLP,* New York City (*Joseph G. Coleo* and *Joshua K. Leader* of counsel), for nonparty respondents. I. The First Department correctly held that the Master Settlement Agreement's plain language requires arbitration. (*Fleet Tire Serv. of N. Little Rock v Oliver Rubber Co.,* 118 F3d 619; *Matter of Potoker [Brooklyn Eagle],* 286 App Div 733, 2 NY2d 553; *Ross Bros. Constr. Co., Inc. v International Steel Servs., Inc.,* 283 F3d 867; *Matter of United Nations Dev. Corp. v Norkin Plumbing Co.,* 45 NY2d 358; *Pearl St. Dev. Corp. v Conduit & Found. Corp.,* 41 NY2d 167; *Matter of Trump [Carmel Fifth],* 303 AD2d 287; *CBA Indus. v Circulation Mgt.,* 179 AD2d 615; *Collins & Aikman Prods. Co. v Building Sys., Inc.,* 58 F3d 16; *Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd.,* 51 NY2d 506; *Green v City of New York,* 465 F3d 65.) II. The First Department correctly rejected the State of New York's request that it rewrite the arbitration provision to insert limitations and exceptions it does not contain. (*R/S Assoc. v New York Job Dev. Auth.,* 98 NY2d 29; *Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith,* 85 NY2d 173; *W.W.W. Assoc. v Giancontieri,* 77 NY2d 157; *Ruttenberg v Davidge Data Sys. Corp.,* 215 AD2d 191; *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.,* 514 US 645; *In re Mansion House Ctr. S. Redevelopment Co.,* 661 F2d 724; *Matter of Shondel J. v Mark D.,* 7 NY3d 320; *People v Kohl,* 72 NY2d 191; *McDonnell Douglas Fin. Corp. v Pennsylvania Power & Light Co.,* 858 F2d 825; *Fit Tech, Inc. v Bally Total Fitness Holding Corp.,* 374 F3d 1.) III. The First Department correctly held that the Master Settlement Agreement's payment structure compels arbitration. (*Mat-*

*ter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621; Gaynor v Rockefeller, 15 NY2d 120; College Savings Bank v Florida Prepaid Postsecondary Ed. Expense Bd., 527 US 666; Pennhurst State School & Hospital v Halderman, 465 US 89; Matter of Sprinzen [Nomberg], 46 NY2d 623; Bingham v New York City Tr. Auth., 99 NY2d 355; Flagg v Nichols, 307 NY 96; Maloney v Hearst Hotels Corp., 274 NY 106.) IV. If there were* any question as to arbitrability, it would be resolved by the rule that doubts must be resolved in favor of arbitration. (*Collins & Aikman Prods. Co. v Building Sys., Inc.,* 58 F3d 16; *Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.,* 473 US 614; *Moses H. Cone Memorial Hospital v Mercury Constr. Corp.,* 460 US 1; *Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ.,* 489 US 468; *AT&T Technologies, Inc. v Communications Workers,* 475 US 643; *WorldCrisa Corp. v Armstrong,* 129 F3d 71; *CPR [USA] Inc. v Spray,* 187 F3d 245; *McDonnell Douglas Fin. Corp. v Pennsylvania Power & Light Co.,* 858 F2d 825; *Chevron U.S.A. Inc. v Consolidated Edison Co. of N.Y., Inc.,* 872 F2d 534; *Ivax Corp. v B. Braun of Am., Inc.,* 286 F3d 1309.) V. The First Department correctly held that disputes relating to the Non-Participating Manufacturer adjustment must be arbitrated. (*Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith,* 85 NY2d 173.)

## OPINION OF THE COURT

PIGOTT, J.

In 1998, the Attorneys General of 46 states (including New York) and five island territories and the Corporation Counsel of the District of Columbia signed a Master Settlement Agreement (MSA) with counsel for the largest tobacco manufacturers in the United States. The MSA was approved, as to New York State, by Supreme Court. The claims brought against the tobacco manufacturers included wrongful marketing and advertising of cigarettes and other tobacco products. Various states sought damages based on the costs of treating smoking-related illnesses. In exchange for a release of liability, the tobacco manufacturers agreed to make annual payments, to be allocated among the Settling States. They also agreed to extensive marketing and advertising restrictions. The Original Participating Manufacturers, as they are known, were later joined by more than 40 smaller tobacco companies, referred to as the Subsequent Participating Manufacturers (SPMs), including movants Commonwealth Brands, Inc. (Commonwealth),

King Maker Marketing, Inc. (King Maker), and Sherman 1400 Broadway N.Y.C., Inc. (Sherman). Lengthy and careful negotiations preceded execution of the MSA.

Not all U.S. tobacco manufacturers have joined the MSA. In order to neutralize cost disadvantages suffered by the Participating Manufacturers (PMs) relative to Non-Participating Manufacturers (NPMs), the MSA provides the Settling States with a strong incentive to enact statutes requiring NPMs to make annual payments toward the costs of treating smoking-related illnesses equivalent to those made by the PMs. The MSA sets out a Model Statute, which, if appropriately enacted, "shall constitute a Qualifying Statute."[1] If a Settling State fails to enact, or does not diligently enforce, a Qualifying Statute, PM payments to that state may be subject to the Non-Participating Manufacturer adjustment (NPM adjustment).

In brief, NPM adjustment can be applied to reduce PM payments to a Settling State if (1) PMs collectively lost market share to NPMs in the preceding year[2] and (2) disadvantages resulting from the MSA were a "significant factor" contributing to that loss. But payment to a Settling State is *not* subject to the NPM adjustment

> "if such Settling State continuously had a Qualifying Statute . . . in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year."

Settling States that have diligently enforced their respective Qualifying Statutes are not subject to the NPM adjustment; instead, the adjustment is to be reallocated pro rata among Settling States that are subject to the NPM adjustment, reducing the payments they receive. A decision regarding one Settling State's enforcement of its Qualifying Statute could therefore potentially affect the calculation of amounts due to all other Settling States.

The MSA provides that

> "an Independent Auditor shall calculate and deter-

---

1. New York enacted Public Health Law article 13-G.
2. The aggregate market share of the PMs is compared with their aggregate market share for the base year 1997. If the aggregate market share has decreased by more than 2% there is a "Market Share Loss."

mine the amount of all payments owed pursuant to [the MSA], the adjustments, reductions and offsets thereto (and all resulting carry-forwards, if any), the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the Participating Manufacturers and among the Settling States, and shall perform all other calculations in connection with the foregoing."

The Independent Auditor "shall be a major, nationally recognized, certified public accounting firm." PricewaterhouseCoopers LLP is currently the Independent Auditor.

The Independent Auditor is responsible for determining whether or not PMs collectively lost market share to NPMs. If there is such a loss, "a nationally recognized firm of economic consultants (the 'Firm')" will determine whether disadvantages resulting from the MSA were a significant factor contributing to the loss; its determination is "final and non-appealable." To allow the Independent Auditor to reach a determination about the NPM adjustment before the Firm makes its decision regarding the significant factor condition, the MSA authorizes the Independent Auditor, when information necessary for a determination is missing and not readily available to a party, to "employ an assumption as to the missing information producing the minimum amount that is likely to be due with respect to the payment in question."

The courts that approved the MSA retain jurisdiction to decide disputes about it, as to their respective Settling States, except as otherwise provided. At issue in this case is one of the exceptions, an arbitration provision governing the resolution of disputes about the Independent Auditor's calculations and determinations:

> "Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX (j) or subsection XI (i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall

select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act."

In March 2004, the Independent Auditor issued preliminary and final notices of calculation for payments due from the PMs for 2003. It determined that the PMs had suffered a market share loss and, employing the "missing information" provision, assumed that disadvantages brought on by the MSA were a significant factor contributing to this loss.[3] But the Independent Auditor declined to apply the NPM adjustment, rejecting a request from the movants to do so. Citing information provided by the National Association of Attorneys General that all Settling States had enacted Model Statutes represented to be "in full force and effect," the Independent Auditor concluded that "no possible NPM adjustment is allocated to PMs."

Three SPMs—Commonwealth, King Maker and Sherman— moved in Supreme Court to compel arbitration. Movants disputed the Independent Auditor's refusal to apply the NPM adjustment, asserting that it had no right to presume diligent enforcement of Qualifying Statutes. Supreme Court denied the motion. The movants appealed. The Appellate Division reversed and ordered the motion to be granted (30 AD3d 26 [2006]). We granted the State leave to appeal, and now affirm.

The plain language of the MSA compels arbitration. The parties to the MSA agreed that *"[a]ny* dispute, controversy or claim arising out of or *relating to* calculations performed by, or any determinations made by, the Independent Auditor" (emphasis added) will be subject to arbitration. By using the expansive words "any" and "relating to," the MSA makes explicit that all claims that have a connection with the Independent Auditor's calculations and determinations are arbitrable.

We discern no intent to limit arbitration to *review* of calculations performed or decisions reached by the Independent Auditor. Therefore, the State's contention that the Independent Auditor did not reach a "determination" about diligent enforcement of Qualifying Statutes when it concluded that no NPM adjustment was possible is not pertinent. The movants' asser-

---

**3.** In March 2006, the Firm determined that disadvantages resulting from the MSA *were* a significant contributory factor.

tions—that the Independent Auditor should not have presumed that New York diligently enforced its Qualifying Statute and therefore wrongly declined to allocate the NPM adjustment—constitute claims "relating to" the Independent Auditor's calculations and determinations. The arbitration provision therefore "expressly and unequivocally encompasses the subject matter of the particular dispute" (*Bowmer v Bowmer*, 50 NY2d 288, 293-294 [1980]).

We find especially compelling the parenthetical clause in the arbitration provision giving examples of arbitrable disputes: "including, *without limitation, any* dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX (j) or subsection XI (i)" (emphasis added). The language is expansive and the examples are telling. MSA subsection IX (j) gives the "Order of Application of Allocations, Offsets, Reductions and Adjustments" by the Independent Auditor, and among the listed adjustments is the NPM adjustment.

It is true that the signatories did not intend to refer all disputes about the MSA to arbitration. The arbitration clause is limited to disputes connected with the Independent Auditor's calculations and determinations while at the same time it is expansive within that boundary. Such an arbitration clause is misleadingly called broad. Nevertheless, the movants' claims fall within its purview.

Our plain language interpretation of the arbitration provision is consistent with the use of arbitration "as a means of conserving the time and resources of the courts and the contracting parties" (*Matter of Smith Barney Shearson v Sacharow*, 91 NY2d 39, 49 [1997], quoting *Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91, 95 [1975]). We note that the arbitration provision occurs in a settlement agreement, and that it is the nature of a settlement to eliminate unpredictable litigation. In this regard, we agree with the Appellate Division that there is fairness to all parties in a "mechanism of submitting disputes involving the decisions of the Independent Auditor to a neutral panel of competent arbitrators, who are guided by one clearly articulated set of rules that apply universally in a process where all parties can fully and effectively participate" (30 AD3d at 32-33).

We therefore conclude that the questions whether New York enacted and diligently enforced a Qualifying Statute and

whether it was correctly spared the NPM adjustment are arbitrable.[4]

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order affirmed, with costs.

---

4. All but one of the MSA and appellate courts deciding this issue agree that the MSA compels arbitration. The sole exception is *State of North Dakota v Philip Morris, Incorporated [et al.]* (ND Dist Ct, County of Cass, July 18, 2006, File No. 09-98-C-03778). The highest courts of Connecticut and Massachusetts have expressly endorsed the Appellate Division's reasoning (*see State v Philip Morris, Inc.*, 279 Conn 785, 905 A2d 42 [2006]; *Commonwealth v Philip Morris Inc.*, 448 Mass 836, 864 NE2d 505 [2007]).