SEE, Justice.
 

 The State of Alabama (“the State”) appeals from an order of the Montgomery Circuit Court compelling arbitration and denying the State’s motion for a declaratory order in an underlying action involving tobacco-product manufacturers. We affirm in part, reverse in part, and remand.
 

 Facts and Procedural History
 

 In 1998, the State and 45 other states, the District of Columbia, Puerto Rico, the Virgin Islands, American Somoa, the Northern Mariana Islands, and Guam (collectively “the settling states”) entered into a master settlement agreement (“the agreement”) with Philip Morris USA, Inc., R.J. Reynolds Tobacco Company, Inc., Lorillard Tobacco Company, Inc., and Brown & Williamson Tobacco Corporation. These four tobacco-product manufacturers are referred to in the agreement as the original participating manufacturers (“original PMs”).
 
 [1]
 
 The agreement arose out of lawsuits filed by the settling states seeking to recover health-care costs for smoking-related illnesses.
 
 [2]
 
 Under the terms of the agreement, the settling states
 
 *4
 
 agreed to dismiss the lawsuits and to release the tobacco-product manufacturers from all future claims. In return, the tobacco-product manufacturers agreed to abide by specific advertising and marketing restrictions and to make annual payments based upon each tobacco-product manufacturer’s nationwide cigarette sales.
 

 The agreement allowed other tobacco-product manufacturers to join in the agreement and thereby to avoid future litigation. Nearly 40 smaller manufacturers did so. These tobacco-product manufacturers became known as the subsequent participating manufacturers (“subsequent PMs”). The original PMs and the subsequent PMs are collectively referred to as the participating manufacturers (“PMs”). The tobacco-product manufacturers that chose not to enter into the agreement are referred to as the nonparticipating manufacturers.
 

 The agreement requires each PM to make an annual lump-sum payment into an escrow account. The balance of that account is then distributed among the settling states based upon their predetermined allocable shares. The payment obligation of each PM is determined by an independent auditor, as defined in the agreement (“the auditor”).
 
 [3]
 
 The agreement provides that the auditor “shall calculate and determine the amount of all payments owed pursuant to this Agreement, the adjustments, reductions and offsets thereto ..., [and] the allocation of such payments, adjustments, reductions, offsets and carry-forwards ..., and shall perform all other calculations in connection with the foregoing.” § XI(a)(l). In determining the payment obligation of each PM, the auditor begins with an annual aggregate base payment obligation enumerated in the agreement for all PMs for each particular year. The auditor then apportions the aggregate base payment among the PMs based upon each PM’s national market share of tobacco products. If the auditor determines that the amount of the aggregate base payment is subject to any reductions, adjustments, or offsets listed in the agreement, the payment obligation of each PM is reduced accordingly.
 

 The nonparticipating-manufacturer adjustment is one of the adjustments included in the agreement. The drafters of the agreement acknowledged that the nonparticipating manufacturers could receive an economic advantage from not being subject to the payment obligations and marketing restrictions in the agreement, and that, as a result, the PMs could suffer a loss in market share to the nonparticipating manufacturers. The nonparticipating-manufacturer adjustment entitles the PMs to an adjustment of the aggregate base payment if the aggregate market share of the PMs during the year for which the payment is being calculated was more than two percentage points below their 1997 market share and if a nationally recognized firm of economic consultants (“the firm”) “determines that the disadvantages experienced as a result of the provisions of this Agreement were a significant factor contributing to the Market Share Loss for the year in question.” § IX(d)(l)(C).
 

 Even if the nonpartieipating-manufac-turer-adjustment requirements are satisfied and the PMs’ payments are therefore due to be reduced, the agreement provides that the allocated payment to a settling
 
 *5
 
 state nonetheless may be exempt from such reduction “if such Settling State continuously had a Qualifying Statute ... in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year.” § IX(d)(2)(B).
 
 [4]
 
 If a settling state qualifies for this exemption from a reduction in payment, that state’s share of the nonparticipating-manufacturer adjustment is reallocated pro rata among the nonexempt states in proportion to the nonexempt states’ allocable shares.
 

 The agreement further provides that, “except as provided in subsections IX(d), XI(c), and XVII(d),” the state court that approved the agreement “shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and ... shall be the only court to which disputes under this Agreement ... are presented as to such Settling State.” § VII(a). That court for the State is the Montgomery Circuit Court. One of the exceptions to a state court’s exclusive jurisdiction under the agreement is the arbitration provision, namely § XI(c), which provides:
 

 “Any dispute, controversy, or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.”
 

 The auditor has refused to apply the nonparticipating-manufacturer adjustment to the PMs’ annual payments for 2006. In 2004, while calculating the payment each PM owed for 2003, the auditor determined that the PMs had suffered an adequate market-share loss as compared to their 1997 market share. Thus, the matter was referred to the firm to determine whether the agreement was a significant factor contributing to the PMs’ market-share loss. In March 2006, the firm determined that the economic obligations and marketing restrictions of the agreement were a significant factor that contributed to the PMs’ market-share loss for 2003. The original PMs, therefore, asked the auditor to apply the nonparticipating-manufacturer adjustment to the 2006 payments to the settling states. The auditor declined to do so because the auditor, at the settling states’ request, presumed that each settling state had enacted and was diligently enforcing a qualifying statute. In a March 7, 2006, letter to the PMs and the settling states, the auditor specifically noted that “[t]he Independent Auditor is not charged with
 
 *6
 
 the responsibility under the Agreement of making a determination regarding this issue ... [and] is not qualified to make the legal determination as to whether any particular Settling State has ‘diligently enforced’ its Qualifying Statute.” The auditor further noted that the auditor would continue to employ the same method in calculating the PMs annual payment amount until this dispute was resolved by the parties or by a trier of fact. The original PMs paid the full amounts calculated by the auditor, without the nonparticipating-manufacturer adjustment, despite the fact that the original PMs maintained that the auditor should have applied the adjustment. However, R.J. Reynolds Tobacco Company, Inc., and Lorillard Tobacco Company, Inc., placed the sum constituting the nonparticipating-manufacturer adjustment into the “Disputed Payment Account,” as provided in §§ XI(d)(7) and (8) of the agreement.
 

 On October 30, 2006, the original PMs moved the Montgomery Circuit Court to compel the State to arbitrate the auditor’s decision not to apply a nonparticipating-manufacturer adjustment.
 
 [5]
 
 The subsequent PMs joined that motion. The State opposed the motion to compel arbitration as to the question whether it had diligently enforced its qualifying statute, but it agreed to participate in the national arbitration as to the question whether the auditor should have applied a nonparticipating-manufacturer adjustment to the payments for the 2006 calendar year. The State alternatively argued that if the diligent-enforcement question is subject to arbitration, then the arbitration should be a local proceeding involving only the State and the PMs. The State subsequently notified the original PMs that it intended to seek a declaratory order pursuant to § VII(c) of the agreement,
 
 [6]
 
 interpreting specific provisions of the agreement, including the term “diligent enforcement.”
 

 The Montgomery Circuit Court held that the plain language of the arbitration clause in the agreement requires the parties to submit to arbitration the question of the State’s diligent enforcement of its qualifying statute and that the arbitration proceeding should be national in scale. The Montgomery Circuit Court also denied the State’s request for a declaratory order. The State appeals.
 

 Standard of Review
 

 “ ‘We review the trial court’s grant or denial of a motion to compel arbitration de novo.’”
 
 Paragon Ltd., Inc. v. Boles,
 
 987 So.2d 561, 563 (Ala.2007) (quoting
 
 Title Max of Birmingham, Inc. v. Edwards,
 
 973 So.2d 1050, 1052 (Ala.2007)).
 

 Analysis
 

 Both the State and the PMs agree that the agreement contains a valid arbitration clause. They disagree as to the scope of the arbitration clause as it pertains to the question of the State’s diligent enforcement of its qualifying statute. Therefore, this Court must determine
 
 *7
 
 whether the arbitration clause encompasses the parties’ dispute over the State’s diligent enforcement of its qualifying statute.
 

 A.
 
 The Arbitrability of the Diligent-Enforcement Issue
 

 It is well established that “ ‘the interpretation of an arbitration agreement within the scope of the [Federal Arbitration Act]’ is governed by ‘general state-law principles of contract interpretation.’ ”
 
 Orkin Exterminating Co. v. Larkin, 857
 
 So.2d 97, 103 (Ala.2003) (quoting
 
 Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,
 
 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). “ ‘When a court construes a contract, “the clear and plain meaning of the terms of the contract are to be given effect, and the parties are presumed to have intended what the terms clearly state.” ’ ”
 
 H & S Homes, L.L.C. v. Shaner,
 
 940 So.2d 981, 988 (Ala.2006) (quoting
 
 Polaris Sales, Inc. v. Heritage Imporis, Inc.,
 
 879 So.2d 1129, 1133 (Ala.2003), quoting in turn
 
 Strickland v. Rahaim,
 
 549 So.2d 58, 60 (Ala.1989)). “ ‘ “[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Federal Arbitration] Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.” ’ ”
 
 Title Max of Birmingham,
 
 973 So.2d at 1054 (quoting
 
 Homes of Legend, Inc. v. McCollough,
 
 776 So.2d 741, 745 (Ala.2000), quoting in turn
 
 Volt Info. Sciences, Inc.,
 
 489 U.S. at 475-76, 109 S.Ct. 1248).
 

 The State argues that the diligent-enforcement question is not subject to arbitration because, it argues, any questions concerning the diligent enforcement of the State’s qualifying statute should be decided by the Montgomery Circuit Court, which, under § VII, retains exclusive jurisdiction over the implementation and enforcement of the agreement. The State further argues that this Court should hold that the Montgomery Circuit Court should decide the diligent-enforcement question because, it argues, the provision that gives the Montgomery Circuit Court jurisdiction over the implementation and enforcement of the agreement precedes, and is inconsistent with, the arbitration clause. It is well established that “ ‘the duty to arbitrate is a contractual obligation and that a party cannot be required to submit to arbitration any dispute that he did not agree to submit.’ ”
 
 UBS Fin. Servs., Inc. v. Johnson,
 
 943 So.2d 118, 121 (Ala.2006) (quoting
 
 Capital Inv. Group, Inc. v. Woodson,
 
 694 So.2d 1268, 1270 (Ala.1997)). “The language of the contract entered into by the parties determines whether a particular dispute should be submitted to arbitration under the contract.”
 
 Capital Inv. Group,
 
 694 So.2d at 1270 (citing
 
 Blount Int’l, Ltd. v. James River-Pennington, Inc.,
 
 618 So.2d 1344 (Ala.1993)). In construing an arbitration agreement, a court must construe the contract “as a whole; detached words or clauses standing alone are not controlling on the question of interpretation, each being viewed in relation to the agreement as an entity.”
 
 Karl Storz Endoscopy-America, Inc. v. Integrated Med. Sys., Inc.,
 
 808 So.2d 999, 1012 (Ala.2001) (quoting
 
 Cedars-Sinai Med. Ctr. v. State Board of Equalization,
 
 162 Cal.App.3d 1182, 1188, 208 Cal.Rptr. 837, 840 (1984)). “Additionally, this Court will interpret the terms of a contract to give ‘effect to all terms used.’”
 
 Medical Servs., LLC v. GMW & Co.,
 
 969 So.2d 158, 162 (Ala.2006) (quoting
 
 Sullivan, Long & Hageriy v. Southern Elec. Generating Co.,
 
 667 So.2d 722, 725 (Ala.1995)).
 

 
 *8
 
 The enforcement provision of the agreement, § VII(a)(3), does provide that for the State the Montgomery Circuit Court “shall be the only court to which disputes under this Agreement or the Consent Decree are presented.” However, the Montgomery Circuit Court’s broad jurisdictional mandate is limited by the preceding clause of § VII(a)(3) (“except as provided in subsection[ ] ... XI(c)”). Section XI(c) provides for the arbitration of “[a]ny dispute ... arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor.” Therefore, the Montgomery Circuit Court retains jurisdiction to determine whether the State diligently enforced its qualifying statute only if that question is not subject to the arbitration provision in the agreement.
 
 [7]
 

 The agreement, § XI(c), provides that “[a]ny dispute, controversy, or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations...) shall be submitted to binding arbitration .... ” The State argues that the dispute over diligent enforcement is not arbitrable because, it says, the arbitration provision is narrow and extends only to a limited range of disputes. However, the PMs contend that the inclusion in the arbitration provision of the “arising out of or relating to” language indicates that “the parties intended to subject to arbitration a broad field of issues having connection with or referring to the Independent Auditor’s determinations.” Original PMs’ brief at 24. We conclude that the clear and unambiguous language of the arbitration provision compels arbitration of the dispute over the State’s diligent enforcement of its qualifying statute.
 
 [8]
 

 
 *9
 
 i.
 
 The broad, language of the agreement requires arbitration of the diligent-enforcement dispute
 

 “ ‘This Court has held [that] where a contract signed by the parties contains a valid arbitration clause that applies to claims “arising out of
 
 or relating to
 
 ” the contract, that clause has a broader application than an arbitration clause that refers only to claims “arising from” the agreement.’ ”
 
 Green Tree Fin. Corp. v. Vintson,
 
 753 So.2d 497, 505 (Ala.1999) (quoting
 
 Reynolds & Reynolds Co. v. King Autos., Inc.,
 
 689 So.2d 1, 2-3 (Ala.1996)). “ ‘This Court has repeatedly stated “‘that the words “relating to” in the arbitration context are given
 
 a broad construction.’
 
 ” ’ ”
 
 Carroll v. W.L. Petrey Wholesale Co.,
 
 941 So.2d 234, 236 (Ala.2006) (quoting
 
 Serra Chevrolet, Inc. v. Hock,
 
 891 So.2d 844, 847 (Ala.2004), quoting in turn other cases).
 

 For a dispute to relate to the subject matter of the arbitration provision, “there must be some legal and logical nexus” between the dispute and the arbitration provision.
 
 Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.,
 
 745 So.2d 271, 275 (Ala.1999). In this case, there is a “legal and logical nexus” between the auditor’s determination not to apply the nonparticipating-manufacturer adjustment and the dispute over the State’s diligent enforcement of its qualifying statute, because diligent enforcement is significant only in determining whether the nonparticipating-manufacturer adjustment applies, and, if so, how the adjustment is allocated among the settling states.
 
 See State v. Philip Morris, Inc.,
 
 179 Md.App. 140, 944 A.2d 1167, 1177 (Md.Ct.Spec.App.2008) (“The diligent enforcement question ... is an indispensable underlying issue of the overall [nonparticipating-manufacturer] Adjustment and, thus, the determination and calculations are inextricably linked.”);
 
 State v. Philip Morris, Inc.,
 
 8 N.Y.3d 574, 580, 838 N.Y.S.2d 460, 869 N.E.2d 636, 640 (2007) (“By using the expansive words ‘any’ and ‘relating to,’ [the agreement] makes explicit that all claims that have a connection with the Independent Auditor’s calculations and determinations are arbi-trable.”). Section IX(d)(l) specifies that the PMs shall be entitled to the nonparticipating-manufacturer adjustment if the PMs suffer a sufficient market-share loss and the firm determines that the agreement was a significant factor in that loss. Once those two requirements are satisfied, a settling state can avoid the application of the nonparticipating-manufacturer adjustment only if it demonstrates that it has enacted and diligently enforced a qualifying statute.
 
 See Commonwealth v. Philip Morris, Inc.,
 
 448 Mass. 836, 847, 864 N.E.2d 505, 513 (2007) (“[Bjecause [the firm] had determined that the [agreement] was a significant factor in the loss of market share ..., the only means by which the auditor could have denied the [nonparticipating-manufacturer] adjustment for that year was by affirmatively finding that there was diligent enforcement by the [settling] States.”). In this case, the auditor determined that the settling states were exempt from the nonparticipating-manufacturer adjustment because the auditor presumed that each settling state had enacted and was diligently enforcing a qualifying statute. Thus, there is an unequivo
 
 *10
 
 cal nexus between the dispute over diligent enforcement and the auditor’s determination as to whether the nonparticipating-manufacturer adjustment applies.
 

 The State insists that the dispute over diligent enforcement does not arise out of or relate to a calculation performed by or a determination made by the auditor because “the question of whether [the State] diligently enforced its [qualifying] statute .... can be determined without any reference whatsoever to any calculation performed by, or any determination made by, the Auditor.” State’s brief at 32. Although a question about diligent enforcement may be resolved independently of any calculation or determination by the auditor, a dispute over diligent enforcement, which this case is, does relate to those calculations and determinations, because the auditor considers the question of diligent enforcement only, and necessarily, to determine whether the nonparticipating-manufacturer adjustment applies. There are only two references to diligent enforcement in the agreement, and both references relate to the allocation of the nonparticipating-manufacturer adjustment among the settling states.
 
 See
 
 § IX(d)(2)(B) (providing that the settling states shall be exempt from the nonparticipating-manufacturer adjustment if they enact a qualifying statute or the model statute and “diligently enforced the provisions of such statute”);
 
 see also State v. Philip Morris USA, Inc.,
 
 155 N.H. 598, 608, 927 A.2d 503, 512 (2007) (“While the State has attempted to rephrase this issue as unrelated to the [nonparticipating-manufacturer] Adjustment, the Court finds the argument unavailing. The parties do not point to, and the Court is not aware of, any provisions in [the agreement] other than those regarding the [nonparticipating-manufacturer] Adjustment, where the diligent enforcement of a Qualifying Statute has any relevance.”).
 

 The State also contends that the dispute over diligent enforcement does not relate to a calculation performed by or a determination made by the auditor because, it says, the agreement does not authorize the auditor to make a diligent-enforcement determination. The State emphasizes that the auditor is a national accounting firm that is neither responsible for nor equipped to handle the responsibility of making the quintessentially legal determination of whether the State had diligently enforced its qualifying statute. Regardless, the contention that the auditor is not authorized to make the determination is contradicted by the plain language of the agreement, which provides that the auditor “shall calculate and determine the amount of all payments owed pursuant to this Agreement, the adjustments, reductions and offsets thereto (and all resulting carry-forwards, if any), the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the [PMs] and among the Settling States.” § XI(a)(l). The nonparticipating-manufacturer adjustment is one of several
 
 adjustments
 
 the auditor is directed to “calculate and determine.” In deciding whether to apply the nonparticipating-manufacturer adjustment, the auditor must determine if the settling states qualify for the diligent-enforcement exemption. As the Supreme Court of New Hampshire stated, the agreement “not only authorizes the [auditor] to make the initial determination of whether to apply the [nonparticipating-manufacturer] Adjustment to the PMs’ annual payments, but it requires the [auditor] to make this determination.”
 
 State v. Philip Morris USA, Inc.,
 
 155 N.H. at 606, 927 A.2d at 510 (emphasis omitted).
 

 The State further argues that the dispute over diligent enforcement does not relate to a “calculation” or “determination” by the auditor because, it says, the auditor
 
 *11
 
 did not actually determine whether the State diligently enforced its qualifying statute. The State maintains that the arbitration provision in the agreement is a mechanism for “review of calculations or determinations made by the [auditor].” State’s brief at 35. In support of this argument, the State points out that the auditor presumed that the State diligently enforced its qualifying statute, and a presumption, the State contends, is different from a determination. However, this argument ignores the broad language in the agreement that encompasses disputes over those issues that are decided by the auditor and issues that “arise out of or relate to” calculations performed by or determinations made by the auditor.
 
 See Commonwealth v. Philip Morris, Inc.,
 
 448 Mass. at 846, 864 N.E.2d at 513 (“Focusing on this language in the arbitration clause ignores, or at least reduces the force of, the preceding phrase, which brings under the clause
 
 ‘[a]ny
 
 dispute, controversy, or claim
 
 arising out of or relating to’
 
 the auditor’s calculations or determinations.”). As we noted above, the dispute over diligent enforcement relates to the nonpartiei-pating-manufacturer adjustment because the auditor declined to apply the adjustment based on a presumption of the State’s diligent enforcement of its qualifying statute.
 
 See
 
 § IX(d)(2)(B) (“A Settling State’s Allocated Payment shall not be subject to [a nonparticipating-manufacturer] Adjustment ... if such Settling State continuously had a Qualifying Statute ... in full force and effect ... and diligently enforced the provisions of such statute.”).
 

 Even if the arbitration provision of the agreement extends only to issues actually decided by the auditor, the dispute over diligent enforcement still would be arbitra-ble. When the auditor presumed that the settling states had diligently enforced their respective qualifying statutes, the auditor made a determination.
 
 State ex rel. Carter v. Philip Morris Tobacco Co.,
 
 879 N.E.2d 1212, 1218 (Ind.Ct.App.2008) (“The decision of the Independent Auditor to employ this presumption [of diligent enforcement of the qualifying statute] constitutes a determination.”);
 
 Commonwealth v. Philip Morris, Inc.,
 
 448 Mass. at 847, 864 N.E.2d at 513 (“Whether the auditor made this determination [of diligent enforcement of the qualifying statute] explicitly, or impliedly, or by employing a presumption makes no difference.”);
 
 State v. Philip Morris, Inc.,
 
 155 N.H. at 606, 927 A.2d at 510 (“We concur with other appellate courts that have held that the [auditor] did, in fact, make a determination regarding diligent enforcement of Qualifying Statutes.”). Once the PMs satisfied the requirements for the nonparticipating-manufacturer adjustment, the settling states could avoid the application of the adjustment only by affirmatively demonstrating diligent enforcement of their qualifying statutes. The fact that the auditor declined to apply the adjustment necessitates the conclusion that the auditor made a determination regarding diligent enforcement.
 
 See Commonwealth v. Philip Morris, Inc.,
 
 448 Mass. at 847, 864 N.E.2d at 513 (holding that “the only means by which the auditor could have denied the [nonparticipating-manufacturer] adjustment for that year was by affirmatively finding that there was diligent enforcement by the [settling] States. It is therefore logically necessary that the auditor did make a diligent enforcement determination.”).
 

 Finally, this Court has stated that “ ‘[c]ourts cannot make contracts for parties, but must give such contracts as are made a reasonable construction and enforce them accordingly.’ ”
 
 Lyles v. Pioneer Housing Sys., Inc.,
 
 858 So.2d 226, 231 (Ala.2003) (quoting
 
 Charles H. McCauley Assocs., Inc. v. Snook,
 
 339 So.2d 1011,
 
 *12
 
 1015 (Ala.1976)). The State has agreed to arbitrate the auditor’s decision not to apply the nonparticipating-manufacturer adjustment but insists that the question of diligent enforcement should be determined by the Montgomery Circuit Court. However, if the Montgomery Circuit Court decided the diligent-enforcement issue, there would be no reason to arbitrate the auditor’s decision not to apply the nonparticipating-manufacturer adjustment. The nonparticipating-manufacturer adjustment and the diligent-enforcement exemption are so inextricably intertwined that resolution of the diligent-enforcement dispute by the Montgomery Circuit Court would render arbitration superfluous. The State’s interpretation of the arbitration provision in the agreement leads to an unreasonable result, because it would render meaningless any arbitration as it relates to the nonparticipating-manufacturer adjustment.
 
 See Karl Storz Endoscopy-America, Inc.,
 
 808 So.2d at 1013 (holding that the argument that nonmaterial breaches are outside the scope of an arbitration clause was unreasonable because “[wjhether a breach is material is ordinarily a question for the trier of fact”).
 

 We, therefore, conclude that the arbitration provision in the agreement encompasses the dispute regarding diligent enforcement of the qualifying statute because that dispute relates to the auditor’s determination not to apply the nonparticipating-manufacturer adjustment,
 

 ii.
 
 The plain and unambiguous language of the agreement requires arbitration of the diligent-enforcement dispute
 

 This Court’s conclusion that the arbitration provision in the agreement encompasses the diligent-enforcement dispute is further reinforced by the parenthetical clause that enumerates a list of arbitrable disputes. Arbitrable disputes are described as “including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i).” The use of the phrase “including, without limitation,” indicates that the disputes listed are illustrative only and do not constitute an exhaustive list of arbitrable disputes.
 
 See In re Mark Anthony Constr., Inc.,
 
 886 F.2d 1101, 1106 (9th Cir.1989) (“In construing a statute, the use of a form of the word ‘include’ is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items.”).
 

 In construing a contract, this Court is guided by the principle that “ ‘[t]he intention of the parties controls ... and the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous.’ ”
 
 Dunes of GP, L.L.C. v. Bradford,
 
 966 So.2d 924, 928 (Ala.2007) (quoting
 
 Loerch v. National Bank of Commerce of Birmingham,
 
 624 So.2d 552, 553 (Ala.1993)). Subsection IX(j), which is included in the list of arbitrable disputes, establishes the calculation method to be employed by the auditor in determining the PMs’ annual payment obligations. The sixth clause of § IX(j) specifically states that “the [nonparticipating-manufacturer] Adjustment shall be applied to the results of clause ‘Fifth’ pursuant to subsections IX(d)(l) and (d)(2).” Subsection IX(d)(l) explains how the auditor shall calculate the nonparticipating-manufacturer adjustment for the original PMs. Subsection IX(d)(2)(A) provides that the “[nonparticipating-manufacturer] Adjustment set forth in subsection (d)(1) shall apply to the Allocated Payments of all Settling States,” unless a settling state can satisfy the requirements of subsection IX(d)(2)(B), which provides that a settling state’s allocated payment will be
 
 *13
 
 exempt from the nonparticipating-manufacturer adjustment if the settling state “had a Qualifying Statute ... in full force and effect” and “diligently enforced the provisions of such statute during such entire calendar year.” The parenthetical list in the agreement of arbitrable disputes indirectly refers to diligent enforcement as an arbitrable dispute. Thus, applying the plain and unambiguous language of the list of arbitrable disputes contained in the agreement, we conclude that the arbitration provision compels arbitration of the diligent-enforcement issue.
 

 iii.
 
 The structure of the agreement requires arbitration of the diligent-enforcement dispute
 

 This Court is also persuaded by the argument that the unitary-payment structure and the method for allocating the nonparticipating-manufacturer adjustment among the settling states compels arbitration of the diligent-enforcement dispute. The State contends that one national arbitration would be a “logistical nightmare” that “involv[es] forty-seven companies and fifty-two States and territories, in which every State defends its own enforcement efforts and points fingers at other States, taking months, if not years, to complete.” State’s brief at 41. The State also argues that the diligent-enforcement exemption is a state-separate determination and that separate proceedings to determine each state’s diligent enforcement of its qualifying statute would not result in inconsistent or conflicting decisions. We disagree.
 

 The agreement requires each PM to make one annual payment. After combining the annual payments of all the PMs, the auditor calculates each setting state’s share of the funds. In calculating each settling state’s share, the auditor must reduce the payment obligation of each PM if the auditor determines that the nonparticipating-manufacturer adjustment applies. If, however, the auditor determines that a settling state diligently enforced its qualifying statute or that a group of settling states diligently enforced their qualifying statutes, the remaining nonexempt settling states will be subject to the reallocation provision in subsection IX(d)(2)(C) of the agreement, which provides that the adjustment that would have applied to the exempt settling states shall be reallocated among the nonexempt settling states according to each nonexempt state’s alloca-ble share. Because a diligent-enforcement determination as to one settling state will have an adverse impact on the remaining nonexempt settling states, it is essential that disputes regarding diligent enforcement be resolved in a national arbitration proceeding. Individual resolution of diligent-enforcement disputes in 52 separate state courts would involve the application of different standards in determining what activities constitute diligent enforcement and could lead to inconsistent and conflicting determinations on the issue. A national arbitration proceeding will ensure that disputes regarding diligent enforcement are resolved by three neutral arbitrators “ ‘who are guided by one clearly articulated set of rules that apply universally in a process where all parties can fully and effectively participate.’”
 
 State v. Philip Morris, Inc., 8
 
 N.Y.3d at 581, 838 N.Y.S.2d 460, 869 N.E.2d at 640 (quoting
 
 State v. Philip Morris, Inc.,
 
 30 A.D.3d 26, 32-33, 813 N.Y.S.2d 71, 76 (N.Y.App.Div.2006)).
 

 The State also argues that even if the dispute regarding diligent enforcement is an arbitrable issue, the dispute should be resolved in a local proceeding that excludes the other settling states. The State maintains that the agreement does not envision a national arbitration proceeding based on language in the arbitration provision stating that “[e]ach of the two sides to the dispute shall select one arbitrator.”
 
 *14
 
 The State infers from this language that the agreement does not contemplate a national arbitration because the settling states have competing interests as to diligent enforcement.
 

 However, as noted previously, we conclude that the agreement requires a national, as opposed to a local, arbitration proceeding. The agreement is an agreement between 52 states and territories and numerous PMs; it provides that the settling states would dismiss all tobacco-related lawsuits and, as consideration for doing so, would receive annual monetary compensation from the PMs. The settling states represent one side to the agreement; the PMs represent the other side. Therefore, the language of the agreement refers to the collective settling states and the collective PMs, each choosing an arbitrator. We also note that conducting 52 separate arbitration proceedings would likely be fraught with the same type of inequitable and inconsistent results that would arise were the individual state courts to resolve this dispute. Independent resolution of diligent-enforcement disputes by local arbitration panels would likely result in the development of “ ‘fifty-two different sets of payment rules’ ” that would unfairly burden some states and benefit others and result in “ ‘wave after costly wave of new litigation.’ ”
 
 Connecticut v. Philip Morris, Inc.,
 
 279 Conn. 785, 800, 905 A.2d 42, 50 (2006) (quoting trial court).
 

 We therefore conclude that both the language and the structure of the agreement compel arbitration of the dispute regarding the State’s diligent enforcement of its qualifying statute. We further conclude that the structure and purpose of the agreement envision a national, as opposed to a local, arbitration proceeding.
 
 [9]
 

 B.
 
 The State’s Request for a Declaratory Order
 

 The State seeks review of the Montgomery Circuit Court’s decision to deny without prejudice the State’s request for a declaratory order. The agreement allows any settling state or PM to bring an action in the settling state’s respective state court to obtain “a declaration construing any such term [of this agreement] with respect to disputes, alleged violations or alleged breaches within such Settling State.” § VII(e)(l). The State gave the required notice that it intended to move for a declaratory order to have the Montgomery Circuit Court construe the term “diligent enforcement” as it is used in the agreement. The State argues here that the Montgomery Circuit Court erred in denying its motion for a declaratory order
 
 *15
 
 because, it argues, the motion was not actually filed and there was never any briefing or hearing on the issue. We agree.
 

 This Court has stated that “ ‘ “the court can consider only the issues made by the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded.” ’ ”
 
 Chapman v. Gooden,
 
 974 So.2d 972, 984 (Ala.2007) (quoting
 
 Central Bank of Alabama, N.A. v. Ambrose,
 
 435 So.2d 1203, 1206 (Ala.1983), quoting in turn
 
 Sylvan Beach, Inc. v. Koch,
 
 140 F.2d 852, 861-62 (8th Cir.1944)). The State had not yet moved for the declaratory order; therefore, we reverse the circuit court’s decision denying the State’s motion for a declaratory order, and we remand these cases with instructions for the circuit court to vacate the denial of the State’s anticipated motion.
 
 [10]
 

 Conclusion
 

 For the foregoing reasons, we conclude that the Montgomery Circuit Court correctly held that the arbitration provision in the agreement encompasses the dispute regarding diligent enforcement and that that dispute is to be resolved in a national arbitration proceeding. We therefore affirm that portion of the circuit court’s judgment. However, because the State has not moved for a declaratory order, we reverse the circuit court’s denial of an anticipated motion and remand this case with instructions for the Montgomery Circuit Court to vacate its denial.
 

 1060988 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 1060989 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 1060990 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
 

 [1]
 

 . R.J. Reynolds Tobacco Company, Inc., and Brown & Williamson Tobacco Corporation merged in 2004. Therefore, the original PMs now consist of Phillip Morris USA, Inc., R.J. Reynolds Tobacco Company, Inc., and Loril-lard Tobacco Company, Inc.
 

 [2]
 

 . On November 19, 1998, the circuit court consolidated the three tobacco-related cases from which these appeals are taken. Specifically,
 
 State of Alabama et al. v. American Tobacco Co. et al.
 
 (CV-98-2940);
 
 Blaylock et al. v. American Tobacco Co. et al.
 
 (CV-96-1508); and
 
 State of Alabama v. Philip Morris Inc., et al.
 
 (CV-98-2941). This Court subsequently assigned those actions the following case numbers on appeal: Supreme Court case no. 1060988 (CV-98-2941); case no. 1060989 (CV-98-2940); and case no. 1060990 (CV-96-1508). These appeals have been consolidated for the purposes of writing one opinion.
 

 [3]
 

 . The agreement provides that the auditor "shall be a major, nationally recognized, certified public accounting firm jointly selected by agreement of the Original Participating Manufacturers and those Attorneys General of the Settling States who are members of the [National Association of Attorneys General] executive committee.” § XI(b). The current auditor is PricewaterhouseCoopers, LLP.
 

 [4]
 

 . The State has enacted such a statute.
 
 See
 
 § 6-12A-1
 
 et seq.,
 
 Ala.Code 1975. A qualifying statute must impose payment obligations on the nonparticipating manufacturers, who are not subject to the annual payment obligations in the agreement. Alabama's qualifying statute requires each nonparticipating manufacturer to establish a “qualified escrow fund" to be available to pay any judgment or settlement on any released claim brought against such manufacturer by the State or any releasing party located or residing in the State and to make scheduled deposits into the escrow fund based upon each nonparticipating manufacturer's cigarette sales in the State for the preceding calendar year.
 
 See
 
 § 6-12A-3(a)(3)b.l. and 2., and d.L, Ala.Code 1975.
 

 [5]
 

 . The agreement is the result of lawsuits originally filed by the State against the tobacco-product manufacturers, which resulted in both sides entering into the agreement. Therefore, the State was not "made a defendant in any court of law or equity” (Art. I, § 14, Ala. Const.1901), and sovereign immunity is not implicated, even though the original PMs moved to compel the State to arbitrate.
 

 [6]
 

 . Section VII(c) provides:
 

 "Except as provided in subsections IX(d), XI(c), XVII(d) ... any Settling State or Participating Manufacturer may bring an action in the Court to enforce the terms of this Agreement (or for a declaration construing any such term ('Declaratory Order')) with respect to disputes, alleged violations or alleged breaches within such Settling State.”
 

 [7]
 

 . The State's argument that the Montgomery Circuit Court retains jurisdiction over the diligent-enforcement issue because § VII, the enforcement provision, precedes the arbitration provision in § XI(c) is without merit. There is a rule of construction that provides that "if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed.”
 
 City of Fairhope v. Town of Daphne,
 
 282 Ala. 51, 58, 208 So.2d 917, 924 (1968). The State, however, does not demonstrate that the enforcement provision and the arbitration provision of the agreement are inconsistent as to whether the Montgomery Circuit Court or a panel of arbitrators will determine the diligent-enforcement question. Instead, the State’s argument simply demonstrates that the two provisions are mutually exclusive. Therefore, depending on which clause is found to apply, the agreement exclusively vests in either the Montgomery Circuit Court or a panel of arbitrators the authority to make the diligent-enforcement determination.
 
 See Celtic Life Ins. Co. v. McLendon,
 
 814 So.2d 222, 225 (Ala.2001) ("[A]s a practical matter, arbitration and litigation of the same subject matter are mutually exclusive.”).
 

 [8]
 

 . In holding that the arbitration clause compels arbitration of the dispute over diligent enforcement, we note that our decision is in agreement with the overwhelming majority of jurisdictions that have addressed this issue.
 
 See, e.g., State v. Philip Morris, Inc.,
 
 179 Md.App. 140, 944 A.2d 1167, 1176 (Md.Ct. Spec.App.2008) ("After giving effect to each clause and construing [the agreement] in its entirety, arbitration is mandatory.”);
 
 Commonwealth v. Philip Morris, Inc.,
 
 448 Mass. 836, 844-45, 864 N.E.2d 505, 512 (2007) (“The language of the settlement agreement arbitration clause thus plainly and unambiguously encompasses the present dispute.”);
 
 State
 
 v.
 
 Philip Morris USA, Inc.,
 
 155 N.H. 598, 608, 927 A.2d 503, 512 (2007) ("Thus, a dispute over diligent enforcement arises out of a determination by the Independent Auditor whether to apply the [nonparticipating-manufacturer] Adjustment.”);
 
 State v. Philip Morris, Inc.,
 
 8 N.Y.3d 574, 581-82, 838 N.Y.S.2d 460, 869 N.E.2d 636, 640 (2007) ("We therefore conclude that the questions whether New York enacted and diligently enforced a Qualifying Statute and whether it was correctly
 
 *9
 
 spared the [nonparticipating-manufacturer] adjustment are arbitrable.”);
 
 State v. Philip Morris, Inc.,
 
 732 N.W.2d 720, 731 (N.D.2007) (“We conclude the plain and unambiguous language of the settlement agreement requires arbitration of the parties' dispute over application of the diligent enforcement exemption to the non-participating manufacturer adjustment .... ”). The only contrary case of which we have been made aware is a Louisiana trial court opinion that is presently on appeal.
 
 Foti v. Philip Morris USA, Inc.,
 
 No. 1998-6473 (La.Dist.Ct. May 31, 2007), appeal docketed, No. CA 0833 (App.3d Cir.).
 

 [9]
 

 . The State contends that the PMs have not provided any evidence demonstrating that the State has failed to diligently enforce its qualifying statute. The State therefore argues that the PMs have not proved that there is a bona fide arbitrable dispute as to this issue. This Court has stated that a party moving to compel arbitration must produce "some evidence” tending to establish its claim.
 
 Ryan’s Family Steak Houses, Inc. v. Regelin,
 
 735 So.2d 454, 457 (Ala.1999). However, in cases involving the application of an arbitration provision, this requirement extends only to the moving party's "initial burden of producing 'some evidence' that a contract calling for arbitration exists and that the underlying transaction involves interstate commerce.”
 
 Title Max of Birmingham,
 
 973 So.2d at 1052 (citing
 
 Polaris Sales, Inc. v. Heritage Imports, Inc.,
 
 879 So.2d 1129, 1132 (Ala.2003)). The parties agree that the agreement contains a valid arbitration clause, and neither party argues that the agreement does not involve interstate commerce. Therefore, it appears that the PMs have met their initial burden. Moreover, the merits of the issue regarding the State’s diligent enforcement of the qualifying statute are not before us. Instead, our review is limited to whether the diligent-enforcement issue falls within the scope of the arbitration provision in the agreement.
 

 [10]
 

 . The PMs point out that the State's intention to obtain a declaratory order construing the term "diligent enforcement” would constitute an improper attempt to have the Montgomery Circuit Court resolve an issue that is the subject of arbitration.
 
 See AT & T Techs., Inc. v. Communications Workers of America,
 
 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.”);
 
 Karl Storz Endoscopy-America, Inc.,
 
 808 So.2d at 1013 ("[A]
 
 de facto
 
 resolution of the merits of [a] claim” “would render entirely illusory the right to a resolution through arbitration.”). However, the PMs’ argument addresses the merits of the State's motion. Because we have already determined that the Montgomery Circuit Court could not deny a motion that was never filed, we do not reach this argument.