MURDOCK, Justice
(dissenting).
In 2007, Newport Television, LLC, purchased from Clear Channel Broadcasting, Inc., the assets and operations of two television stations at which Cyndi Booth was employed. In conjunction with her employment, Booth and Clear Channel had entered into a noncompetition agreement. This case involves a dispute between Newport and Booth as to whether the noncom-petition agreement was assigned to, and thus enforceable by, Newport as part of its purchase of the two stations for which Booth worked. The trial court held that it was and entered a summary judgment for Newport. The Court of Civil Appeals reversed the summary judgment. Booth v. Newport Television, LLC, 111 So.3d 719 (Ala.Civ.App.2011). Newport sought cer-tiorari review by this Court of the Court of Civil Appeals’ decision. This Court granted that review, but today quashes the writ by which it did so. I dissent from this action. It appears to me that the trial court was correct. At best from Booth’s standpoint, the contract pursuant to which Newport purchased the assets and operations of Clear Channel (“the purchase agreement”) is ambiguous, and, if that is so, the trial court correctly construed it in favor of Newport. Arguably, in fact, the purchase agreement is unambiguous in favor of Newport.
Article 1.1 of the purchase agreement provides, rather simply, that Newport acquired “all right, title and interest of [Clear Channel] in and to the Station Assets.” Consistent with the notion of a sale of an entire business operation, Article 1.1 defines “Station Assets” as “all of the assets, rights and properties used or held for use exclusively [i]n the ownership and operation of the Stations.” (Emphasis added.) Booth’s noncompetition agreement *731 indisputably falls within the emphasized language.
Following the above-quoted definitional language in Article 1.1 appears the following phrase: “including each of the following assets ....” Nothing in this phrasing restricts the language preceding it to only those items that follow.[1]
It appears that a proper analysis of this case could stop at this point, resulting in a decision in favor of Newport.
For what it is worth, however, the following items are among those listed immediately after the “including” phrase:
“(d) the following contracts, agreements and leases (including employment agreements, ...) to which [Clear Channel] is party (collectively, the ‘Station Contracts’) and all rights thereunder ...: (i) all contracts, agreements and leases listed on Schedule 1.1(d) and (ii) all other contracts, agreements and leases that relate exclusively to the operation of the Stations.... ”
(Emphasis added.) Much of the controversy in this case revolves around the fact that Booth’s noncompetition agreement was not one of the agreements listed on Schedule 1.1(d). Even if one were to proceed past the analytical “stopping point” noted above, that fact would not be dispos-itive for two reasons.
First, the above-quoted passage from subsection (d) expressly states that the contracts sold to Newport pursuant to the purchase agreement include not only those contracts and agreements listed on Schedule- 1.1(d), but also those described in clause (ii), i.e., “all other contracts, agreements and leases that relate exclusively to the operation of the Stations.” Booth’s noncompetition agreement falls within this latter description. The fact that the drafter of the purchase agreement failed to include Booth’s noncompetition agreement on Schedule 1.1(d) casts doubt on the accuracy of a representation found elsewhere in the purchase agreement that Schedule 1.1(d) sets forth a “complete list of all contracts, agreements and leases that relate exclusively to the operation of the Stations.” In fact, given the existence and nature of Booth’s noncompetition agreement, the unassailable fact is that this representation is simply incorrect. Even assuming that we somehow could ignore the effect of the provisions of the purchase agreement discussed at the outset of this analysis and in the paragraph that follows, this circumstance would, at best, only create an ambiguity as to the parties’ intent.
Second, the representation that Schedule 1.1(d) constitutes a “complete list” of all contracts relating exclusively to the operation of the television stations is, itself, not absolute. Specifically, that representation ends with two explicit “other than” exceptions, i.e., types of contracts not necessarily included on Schedule 1.1(d). Both *732 of these exceptions appear to describe Booth’s noncompetition agreement:
“contracts which were entered into in the ordinary course of business and (i) which are terminable on thirty (30) days’ notice or less without penalty or premium, or (ii) did not impose monetary obligations on [Clear Channel] in 2006, and are not reasonably expected to impose monetary obligations on [Clear Channel] in 2007, in excess of $250,000 and which impose no material restrictions on the operation of the Stations.”
Based on the foregoing, I respectfully dissent from the decision by this Court today to quash the writ of certiorari this Court previously granted in this case.
SHAW, J., concurs.

. "In construing a statute, the use of a form of the word 'include' is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items." In re Mark Anthony Constr., Inc., 886 F.2d 1101, 1106 (9th Cir.1989) (cited with approval in State ex rel. Riley v. Lorillard Tobacco Co., 1 So.3d 1, 12 (Ala.2008)); see also Friedman v. P+P, LLC (In re Friedman), 466 B.R. 471, 487 (9th Cir. BAP 2012) (“It is a well-established canon of statutory construction that when the word 'includes' or 'including' is followed by a list of examples, those examples are considered illustrative rather than exhaustive."); Puerto Rico Maritime Shipping Auth. v. I.C.C., 645 F.2d 1102, 1112 n. 5 (D.C.Cir.1981) (noting that it is "hornbook law” that a list following the word "including” is "illustrative, not exclusive”); and Bryan A. Garner, A Dictionary of Modern Legal Usage 431 (2d ed.1995) (noting that the term "including” "should not be used to introduce an exhaustive list, for it implies that the list is only partial”).