In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1670

PAUL HABER,

*Plaintiff-Appellant*,

*v.*

BIOMET, INCORPORATED, and
BIOMET ORTHOPEDICS, INCORPORATED,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-1447-LJM-WTL—**Larry J. McKinney**, *Judge.*

ARGUED FEBRUARY 17, 2009—DECIDED AUGUST 20, 2009

Before POSNER, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Biomet produces prosthetic joints, such as artificial hips and knees, and there is great demand for its products in Florida. To meet this demand, Biomet contracted with Paul Haber, who served as a distributor for Biomet in various Florida counties. The parties structured their relation through agreements made in 1995 and 1999; those agreements

contained different methods for dispute resolution. The 1995 version required that disputes be litigated in Indiana, while the 1999 text required arbitration in Chicago, Illinois. The parties modified the 1995 Agreement several times between 1995 and 2005. Biomet apparently believed that the 1995 Agreement's litigation clause governed the entire relation between the parties. As became clear later, Haber thought that the arbitration clause in the 1999 Agreement controlled.

In 2007, Biomet and Haber's relation turned sour. Biomet believed that Haber had violated their agreements by working for a competitor, and so it filed suit against Haber in Hamilton Superior Court in Indiana. In response, Haber filed a complaint to compel arbitration in the Southern District of Indiana, which dismissed the case because of improper venue. Haber then filed a motion to compel arbitration in Hamilton Superior Court, which granted the motion with respect to Biomet's claims arising under the 1999 Agreement, but denied it with respect to the claims arising under the 1995 Agreement. (In so ruling, the state court necessarily decided that the two agreements had to be treated separately.) Haber chose to appeal only the decision of the federal district court, leaving the Indiana state court's decision undisturbed.

We conclude that *res judicata* bars our consideration of the particular arbitrability issue that Haber asks us to consider in his appeal. At Haber's urging, the Hamilton Superior Court reached that issue first and resolved it. In addition, the district court's rationale for dismissing

Haber's complaint on the basis of venue was sound. Therefore, we affirm.

## I

As we have already noted, this case involves a garden-variety relation between a manufacturer and a distributor. Haber distributed Biomet's medical devices in several counties in Florida. The parties launched this arrangement through a letter dated May 26, 1995 ("1995 Agreement"). That document contained the following provision on the topic of dispute resolution:

> It is further agreed that any and all actions concerning any dispute arising under our relationship shall be filed and maintained only in a state or federal court of competent jurisdiction sitting in the State of Indiana, and both of us consent to such jurisdiction.

The parties later amended this agreement eleven times (in 1995, 1996 (three times), 1997, 1998, 1999, 2001 (three times), and 2005), mostly to add or remove territories in which Haber could sell Biomet products. These modifications always referred to the 1995 Agreement and stated clearly that they were amendments.

The parties executed a separate agreement in a letter dated October 8, 1999 ("1999 Agreement") that addressed several points: it added Sarasota County to Haber's portfolio; it enlarged Biomet's rights with regard to various contractual provisions; and it included an arbitration clause, which stated plainly that the "place of arbitration shall be Chicago, Illinois."

On September 12, 2007, Biomet, believing that Haber had violated their agreements by working for a competitor, filed suit in Hamilton Superior Court, a state court in Indiana; for federal court purposes, Hamilton County lies within the Indianapolis Division of the Southern District of Indiana. See 28 U.S.C. § 94(b)(1). In response, Haber filed a complaint in the Southern District of Indiana to compel arbitration and to stay the state court proceedings. In its court documents, Biomet advanced the theory that the choice-of-forum clause contained in the 1995 Agreement governed the entire Biomet-Haber relationship. Haber expressed the contrary view that the 1999 Agreement's arbitration clause controlled everything. The district court ruled that it lacked authority to order arbitration because it was not located in the venue specified by the parties: Chicago, Illinois. In dicta, it also stated that the 1995 and 1999 Agreements were separate and that any claims arising under the 1995 Agreement had to be litigated in Indiana. It thus dismissed the complaint.

Instead of refiling in Chicago, Haber appealed the district court's judgment to this court and at the same time filed a motion in Hamilton Superior Court to compel arbitration and stay proceedings. On June 4, 2008, the Indiana state court granted in part and denied in part Haber's motion. It ruled that the 1995 and 1999 Agreements were separate; it required Biomet to identify which claims arose under which agreement; and it compelled arbitration on the claims (if any) that fell under the 1999 Agreement. Haber did not appeal that decision.

## II

Biomet raises the threshold question whether this court's consideration of the arbitrability issue is prohibited by the doctrine of *res judicata*, in light of the Hamilton Superior Court's ruling on arbitrability. State court judgments are entitled to recognition by federal courts and are entitled to preclusive effect. 28 U.S.C. § 1738; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983); *Merrill Lynch, Pierce, Fenner & Smith v. Salvano*, 999 F.2d 211, 216 (7th Cir. 1993). Indiana, like most places, recognizes two different types of preclusive effects: claim preclusion and issue preclusion. See *Lanny B. v. Marion County Dep't of Child Servs. (In re L.B.)*, 889 N.E.2d 326, 333 (Ind. Ct. App. 2008). While neither party is particularly clear about what type of preclusion is at stake here, issue preclusion seems the likeliest candidate. The Hamilton Superior Court case has not concluded. What the court did, however, was to decide that claims under the 1995 Agreement were not arbitrable. If that decision is entitled to preclusive effect, then the federal court would need to follow suit.

Because issue preclusion cannot be applied unless the rendering court's decision is final, we must decide what exactly is necessary for finality in this context. On this point, the Restatement (Second) of Judgments, to which the Indiana courts turn, see, *e.g., Miller Brewing Co. v. Indiana Dept. of State Revenue,* 903 N.E.2d 64, 68 (Ind. 2009), is instructive:

> The rules of *res judicata* are applicable only when a final judgment is rendered. However, for purposes of

issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.

. . .

*g. Criteria for determining finality in the application of issue preclusion.* . . . [T]he court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision.

Restatement (Second) of Judgments § 13 (1982). See also *Johnson v. Anderson,* 590 N.E.2d 1146, 1149 (Ind. Ct. App. 1992) (quoting Restatement (Second) of Judgments § 18, on finality, with approval). The analysis of finality for purposes of issue preclusion is an holistic one, focused on the nature of the judgment itself and specifically whether it is sufficiently firm and non-tentative.

Once finality has been established, Indiana prohibits relitigation of an issue when four elements are present:

(1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the matter at issue was, or might have been, determined in the former suit; (3) the controversy adjudicated in the former suit was between parties to the present suit; and (4) the judgment in the former suit was rendered on the merits.

*Leal v. Krajewski*, 803 F.2d 332, 334-35 (7th Cir. 1986) (citing Indiana authorities).

Biomet argues for finality based on the fact that an order denying a motion to compel arbitration is immediately appealable as of right in Indiana. See IND. CODE § 34-57-2-19. In its latest decision on issue preclusion, *Miller*, the Supreme Court of Indiana discussed how appealability is an important factor for establishing whether an issue is sufficiently final for issue preclusion purposes:

In general, issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit. Issue preclusion applies only to matters actually litigated and decided, not all matters that could have been decided. The matters decided must have been appealable in the original suit. The right to appeal is sufficient even if it is limited by the discretionary powers of the appellate court, as is the case in review of Tax Court decisions.

903 N.E.2d at 68 (citations omitted). In Biomet's opinion, since Haber failed to appeal the Hamilton Superior Court's order, that order is now sufficiently final to support issue preclusion. Haber takes a stricter view of the matter. He responds that the state court's order is not

a final judgment for purposes of Rule 2(H) of the Indiana Rules of Appellate Procedure, and thus the Indiana state court may revisit the order at any time as the case proceeds. See *McLaughlin v. American Oil*, 391 N.E.2d 864, 865 (Ind. Ct. App. 1979) ("[A] trial court has inherent power to reconsider, vacate or modify any previous order, so long as the case has not proceeded to judgment, i.e., the case is still *in fieri*."). Haber argues that he was not required to appeal the issue immediately, and he may still appeal after the trial court is completely finished with it. See *Georgos v. Jackson*, 790 N.E.2d 448, 452 (Ind. 2003).

As the Restatement of Judgments recognizes, it is a mistake to equate the concept of finality for purposes of appellate review with the concept of finality for purposes of issue preclusion. The finality requirement for appellate review ensures that court resources are used efficiently and that the appellate court sees the entire case. Finality in issue preclusion also serves efficiency, by ensuring that parties who have fully and fairly litigated a particular issue (which is expressly resolved and necessary to the outcome) do not receive more than one bite at the apple. As long as the issue is distinct, it does not matter if other aspects of a case remain to be decided. Indeed, the fact that Indiana permits interlocutory appeals of orders denying motions to compel arbitration tells us that Indiana sees arbitration as sufficiently independent to warrant individual attention by the courts.

Applying these principles to the case before us, we see that the key inquiry for issue preclusion purposes is

whether the decision with respect to arbitrability of claims under the 1995 Agreement was a final and reasoned pronouncement of the Hamilton Superior Court. In our view, it was. Haber put the issue before that court through his motion to compel arbitration, and the court took it up. Its ruling was supported by a reasoned decision, and there is nothing in the record that indicates that it would revisit the issue at a later time, even though it retained the power to do so.

Since there was sufficient finality for the purposes of issue preclusion, the next question is whether the remainder of the requirements have been satisfied. This inquiry is straightforward. The Hamilton Superior Court is a tribunal of competent jurisdiction for this type of case; it actually decided the question of arbitrability of the 1995 claims; the parties before that court were identical to the parties before the district court; and the case was resolved on the merits of Haber's motion to compel arbitration. We conclude that the state court's determination was entitled to preclusive effect in the district court. See 28 U.S.C. § 1738.

### III

We now turn briefly to discuss the basis on which the district court dismissed Haber's complaint to compel arbitration: improper venue. We review a dismissal on the basis of venue *de novo*. *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007).

Section 4 of the Federal Arbitration Act reads as follows:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4. When an arbitration clause in a contract includes a forum selection clause, "only the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). When a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court. See *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

Haber relies on a novel theory of waiver, claiming that Biomet waived its rights under the forum selection clause by initiating litigation in Indiana. Waiver, however, "only applies when there has been the voluntary or intentional relinquishment of a known right." *Vershaw v. Northwestern Nat'l Life Ins. Co.*, 979 F.2d 557, 560 (7th Cir. 1992) (internal quotation marks omitted). Biomet may have waived *its* right to demand arbitration by filing a

lawsuit in the Indiana state courts, but Haber then waived the waiver by seeking to compel the arbitration proceeding contemplated by the 1999 Agreement. Haber was not entitled to pick and choose among various parts of the 1999 Agreement's arbitration clause. Part of that clause was a venue provision: any arbitration under the agreement is to proceed in Chicago.

Haber's theory of waiver also puts a party like Biomet in an impossible situation. Here, there were two agreements between the parties: the 1995 Agreement and the 1999 Agreement. They contained different choice-of-forum clauses. Biomet filed suit in the court specified by the 1995 Agreement, and in that suit it took the position that the 1995 Agreement and the 1999 Agreement were separate. We are loath to infer waiver of its rights under the 1999 Agreement under these circumstances. If Haber were correct, Biomet would have had to select at its peril between invoking its rights under the 1995 Agreement and preserving its right to enforce the 1999 arbitration clause in its entirety, should any claims later be deemed arbitrable. We see nothing in either contract that compels such a choice, and we thus decline to impose it.

The district court therefore did not err in dismissing Haber's complaint because of improper venue. We do find it strange that Haber did not at some point file a motion for transfer to the Northern District of Illinois in Chicago under 28 U.S.C. § 1406, but we can find no such motion in the record. Given the fact that venue was a potentially fatal problem for his case, this would have been the more prudent path to follow.

Finally, we observe that, while each party took an all-or-nothing approach to arbitrability, the Hamilton Superior Court dealt with what claims might be arbitrable under both the 1995 and 1999 Agreements. Haber asserted that everything under both agreements was arbitrable, while Biomet maintained that nothing was arbitrable. Both the district court and the Indiana state court rejected these extreme positions. As we read the two agreements, they were correct to do so. The 1999 Agreement does not follow the form of all the other amendments to the 1995 Agreement, and the post-1999 amendments to the 1995 Agreement never refer to the 1999 Agreement, either as a past amendment or as a document to be amended. These amendments to the 1995 Agreement do, however, refer regularly to earlier amendments to that agreement. If we had to decide this issue, therefore, we would also find no fault in the district court's understanding of the scope of the arbitrable claims.

* * *

The judgment of the district court is AFFIRMED.