# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 7, 2013

No. 12-20291

Lyle W. Cayce
Clerk

JACK J. GRYNBERG; GRYNBERG PRODUCTION CORPORATION, a Texas Corporation; PRICASPIAN DEVELOPMENT CORPORATION, a Texas Corporation; GRYNBERG PRODUCTION CORPORATION, a Colorado Corporation,

Plaintiffs - Appellants,

v.

BP, P.L.C., doing business as BP Corporation North America Inc.; BP EXPLORATION OPERATING COMPANY, LIMITED; BP AMERICA; STATOIL A.S.A.; JOHN BROWNE,

Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-1731

Before REAVLEY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

This case arises out of a decade-long dispute relating to the development of an oil field in Kazakhstan. Plaintiffs–Appellants Jack J. Grynberg and several related entities (collectively referred to as "Plaintiffs") allege that the Defendants–Appellees (collectively referred to as "Defendants") committed

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

certain unlawful acts in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et. seq.*, causing Plaintiffs injury (the "civil RICO claims"). Plaintiffs unsuccessfully advanced the same claims in a prior arbitration proceeding. The district court dismissed Plaintiffs' civil RICO claims. We AFFIRM.

I.

In 1989 and 1990, Jack Grynberg was instrumental in bringing representatives of the Kazakh government together with various oil and gas companies, including BP,[1] to discuss the potential development of the Greater Kashagan Oil Field ("GKOF"). Eventually, a group of oil companies, including BP, formed the Offshore Kazakhstan International Operating Company ("OKIOC Consortium"). Plaintiffs, however, were not members of the OKIOC Consortium. In the early 1990s, BP and Statoil entered into an alliance under which BP retained two-thirds of its OKIOC Consortium interest and Statoil took a one-third share of the interest. In 1997, the OKIOC Consortium obtained Kazakh government approval to develop the GKOF.

Federal litigation, involving Plaintiffs' claim that they were entitled to a share of the proceeds from the GKOF based on their role in facilitating the meetings that occurred in 1989 and 1990, ensued between Plaintiffs, BP, and Statoil. Years of mediation and negotiation eventually resulted in two virtually identical settlement agreements between Plaintiffs and BP and Plaintiffs and Statoil (the "Settlement Agreements"). Under the Settlement Agreements, in relevant part: (1) BP and Statoil agreed to pay Plaintiffs fifteen percent of net profits from their GKOF interests, derived from either production or sale of the interest; (2) the parties agreed to arbitrate any future disputes that might arise

---

[1] The underlying complaint, as well as the parties' briefing, refers to the three BP entities—BP, P.L.C., BP Exploration Operating Company, Ltd., and BP America—collectively. Because their separate roles in the underlying facts are not relevant to this appeal, we also refer to each of the three entities collectively, and individually, as "BP."

from the Settlement Agreements; and (3) Plaintiffs released all other claims and rights against Statoil and BP. In 2002, BP and Statoil sold their interests in the GKOF and subsequently made timely payments to Plaintiffs based on the sale price of their GKOF interests, net of certain costs.

A.

Within several weeks of BP and Statoil's sale of their GKOF interests, Plaintiffs commenced an arbitration proceeding (the "Arbitration") against BP and Statoil claiming, generally, that they were not being paid the appropriate share of the actual value of the GKOF interests sold. While the Arbitration was ongoing, Plaintiffs sued BP and Statoil in the United States District Court in the District of Columbia. Plaintiffs' claims were premised on an allegedly unlawful scheme whereby BP and Statoil, along with other members of the OKIOC Consortium, paid a $175 million bribe to Kazakh officials in the 1990s, disguised as a "signature bonus," to obtain the rights to develop the GKOF. BP and Statoil moved to dismiss and compel arbitration on the basis that Plaintiffs were obligated to arbitrate their claims because they arose out of the Settlement Agreements. The district court granted the motions to dismiss and compel arbitration. *Grynberg v. BP P.L.C.*, 585 F. Supp. 2d 50, 54–56 (D.D.C. 2008). Following the district court's dismissal of their claim, Plaintiffs filed the same claim—the "DC Based RICO Claim"—in the Arbitration.

In February 2010, the arbitrator issued a final award ("Final Award") that resolved each of the claims Plaintiffs advanced in the Arbitration. In the Final Award, the arbitrator dismissed Plaintiffs' "DC Based RICO Claim" based on its finding that Plaintiffs "did not suffer any damages as a result of [Defendants'] alleged RICO violations." The arbitrator also dismissed two claims premised on allegations that BP and Statoil entered into side deals to artificially lower the sale price of their GKOF interests and, consequently, lower

Plaintiffs' fifteen-percent share of the profits from the sales.[2] The arbitrator concluded that there was no evidence supporting Plaintiffs' allegations that the selling price of BP and Statoil's GKOF interests were reduced pursuant to side deals with the purchasing parties.

The arbitrator also dismissed the Plaintiffs' audit claims, which were premised on allegations that the payment of the signature bonus should be disallowed as a legitimate deduction from Plaintiffs' fifteen-percent share of BP and Statoil's sale of their GKOF interests. Plaintiffs argued that the signature bonus should not have been deducted from the sales proceeds because the "payments were not bona fide payments to the Kazakh government for the right to exploit the oil and gas reserves in the [GKOF] but were instead bribes paid to Kazakh government officials in violation of the U.S. Foreign Corrupt Practices Act." The arbitrator, reasoning that it was irrelevant whether the signature bonus was a bribe, dismissed the audit claims after concluding that the independent auditors' decision to deduct the signature bonus was not "arbitrary and capricious or clearly erroneous." The arbitrator also imposed monetary sanctions against the Plaintiffs.

B.

Following the arbitrator's issuance of the Final Award, Defendants moved to confirm the Final Award in the Supreme Court of the State of New York. Plaintiffs filed a cross-motion asking the court to vacate the sanctions entered by the arbitrator and the arbitrator's dismissal of the audit claims and the Egypt-side-deal claim. Plaintiffs did not challenge any other aspect of the Final Award, including the arbitrator's dismissal of the "DC Based RICO Claim" and

---

[2] Specifically, the Plaintiffs' Egypt-side-deal claim involved an allegation that BP sold its GKOF interest to Total, SA ("Total") for a below-fair-market-value price in exchange for a similar price reduction on an Egyptian property BP purchased from Total shortly thereafter. The Norway-side-deal claim involved an allegation that Statoil sold its GKOF interest to Total for a below-fair-market-value price in exchange for BP's willingness to enter into a gas contract with Statoil that overpaid Statoil over a period of years.

Norway-side-deal claim. In December 2010, the court confirmed the Final Award in all respects, with the exception of reversing the arbitrator's order imposing sanctions. *Grynberg v. BP Exploration Operating Co.*, Index No. 116840/2004 (N.Y. Sup. Ct. Dec. 8, 2010), *vacated by, in part, aff'd in part and modified in part*, 938 N.Y.S.2d 439 (N.Y. App. Div. 2012). Plaintiffs appealed the court's denial of their motion to vacate the two claims in the Final Award and Defendants cross-appealed on the sanction issue.

In February 2012, the New York Appellate Division affirmed the lower court's judgment, with the exception of remanding one claim to the arbitrator for further proceedings. *Grynberg v. BP Exploration Operating Co.*, 938 N.Y.S.2d 439, 440 (N.Y. App. Div. 2012). Specifically, the court vacated the arbitrator's dismissal of Plaintiffs' audit claims, explaining that:

> The arbitrator's failure to determine the nature of the disputed payment warrants the vacatur of [the Award on the audit claims]. [Plaintiffs] claim that this payment constituted a bribe. [Defendants] assert it was a bona fide cost of doing business. We remand for the arbitrator to determine the nature of the payment. Contrary to the arbitrator's finding, deducting a payment intended to be a bribe to a public official is unenforceable as violative of public policy . . . .

*Id.* The court remanded the case for the arbitrator to reconsider the audit claims—reconsideration that requires the arbitrator to determine whether the signature bonus was a bribe or a bona fide transaction.[3] *Id.*

### C.

In May 2011, Plaintiffs filed the instant complaint in the District Court for the Southern District of Texas naming BP, Statoil, Browne, and Sutherland as defendants. The complaint seeks monetary relief under 18 U.S.C. § 1964(c) based upon allegations that: (1) BP and Statoil procured their GKOF interests by paying bribes to the Kazakh government; and (2) BP and Statoil entered into

---

[3] The current status of the audit claim on remand is unclear from the record.

side deals connected with their sale of their GKOF interests in an attempt to decrease the amounts owed to Plaintiffs under the Settlement Agreements. These allegations are based on the same legal and factual theories underlying the "DC Based RICO Claim," the Egypt-side-deal claim, and the Norway-side-deal claim that Plaintiffs advanced in the Arbitration.

Separate motions to dismiss were filed by BP, Statoil, Browne, and Sutherland. The district court converted BP's motion to dismiss into a motion for summary judgment and granted each of the motions. Specifically, the district court held that *res judicata* barred Plaintiffs' civil RICO claims against BP and Statoil. The district court also concluded that even if *res judicata* did not bar the claims against Statoil, then Plaintiffs must submit their claims to arbitration. Separately, the district court dismissed Plaintiffs' complaint as to Browne and Sutherland, concluding that general personal jurisdiction did not exist over either defendant. Plaintiffs timely appealed the district court's order dismissing their claims against BP, Statoil, and Browne.

## II.

We review a district court's grant of summary judgment *de novo*. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)). "Summary judgment is proper when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). "The *res judicata* effect of a prior judgment is a question of law that we review *de novo*." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (citing *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 546 (5th Cir. 2001)).

*Res judicata*, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters*

*Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted). *Res judicata*, by preventing later suits from collaterally attacking a prior judgment by a court of competent jurisdiction, "insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994)).  Four elements must be satisfied for *res judicata* to bar a claim: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior action concluded with a final judgment on the merits;  and (4) the same claim or cause of action is involved in both cases.  *Singh*, 428 F.3d at 571 (citation omitted).

In the present case, the first and final elements of *res judicata* are not in dispute.[4]  The parties dispute, however, whether the second and third elements of *res judicata* are satisfied.  While it is undisputed that the arbitrator had the power under the Settlement Agreements to render a final judgment on the merits of Plaintiffs' civil RICO claims, Plaintiffs contend that the arbitrator mistakenly believed that it lacked power to decide one of the elements of the "DC Based RICO Claim" and, therefore, did not exercise jurisdiction over that claim.[5]  Based on our review of the entirety of the record, we disagree.

---

[4] The first element is satisfied because the Plaintiffs, BP, and Statoil were parties to the Arbitration and Browne, as Chief Executive Officer of one of the BP entities during the underlying events, is in privity with BP. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (holding that directors, officers, and employees of a company are in privity with the company for purposes of *res judicata*). The fourth element is satisfied because each of the claims advanced in the present case are identical to claims involved in the Arbitration.

[5] Plaintiffs are correct that a dismissal of a claim for lack of subject-matter jurisdiction does not preclude a second action on the same claim because such a dismissal is not a final judgment on the merits. *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 382 (5th Cir. 1982) (citation omitted).  Even if the dismissal for lack of subject-matter jurisdiction was erroneous because jurisdiction existed in the initial action, the dismissal does not preclude a second

To successfully advance a claim under civil RICO, a plaintiff must demonstrate: (1) that the defendant violated 18 U.S.C. § 1962, a statutory provision that contains RICO's prohibited activities; and (2) that the "RICO predicate offense not only was a but for cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983, 989 (2010) (internal quotation marks omitted). A plaintiff advancing a claim under civil RICO is not required to establish that the defendant was or will be criminally convicted under RICO. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 488–89 (1985) (explaining that the use of the term "violation" in 18 U.S.C. § 1962 "does not imply a criminal conviction" but instead "refers only to a failure to adhere to legal requirements"). Instead, a plaintiff is only required to establish that the defendant's activities are unlawful under 18 U.S.C. § 1962. *See id.* at 489 ("Section 1962 renders certain conduct 'unlawful'; § 1963 and § 1964 impose consequences, criminal and civil, for 'violations' of § 1962.").

The arbitrator dismissed Plaintiffs' "DC Based RICO Claim" based on its finding that Plaintiffs did not suffer an injury as a result of Defendants' alleged RICO violations. The arbitrator did not decide whether the Defendants' actions constituted a violation of § 1962. In addition to discussing the Plaintiffs' failure to prove damages, the arbitrator's discussion of Plaintiffs' "DC Based RICO Claim" also included the following statement: "Although under the broad arbitration provisions contained in the Settlement Agreements the undersigned has the authority to decide civil RICO claims, neither an arbitrator nor an independent auditor has the power or authority to decide whether [Defendants], either directly or indirectly, committed a crime." While this statement

---

action. *See* 18A Charles Alan Wright et al., Federal Practice and Procedure § 4436 (2d ed. 2002) ("The basic rule that dismissal for lack of subject-matter jurisdiction does not preclude a second action" "applies even though the first court may have been wrong in determining that it lacked jurisdiction"). Nevertheless, for the reasons discussed *infra*, these principles are not applicable here.

demonstrates that the arbitrator believed that it could not decide whether Defendants were guilty of committing a crime, it does not suggest that the arbitrator mistakenly believed that it could not decide whether Defendants' actions constituted a violation of 18 U.S.C. § 1962, subjecting them to civil consequences under 18 U.S.C. § 1964. We conclude that the arbitrator exercised jurisdiction over the Plaintiffs' "DC Based RICO Claim" and rendered a final judgment on the merits.

Accordingly, *res judicata* bars Plaintiffs' civil RICO claims against Defendants. Because we may affirm solely on the basis of *res judicata*, we do not address the other grounds that may have supported the dismissal of Plaintiffs' claims against Defendants.[6]

## III.

For the foregoing reasons, we AFFIRM the district court's dismissal of Plaintiffs' civil RICO claims.

---

[6] We note, however, that even if we concluded that *res judicata* were not applicable here, we would remand Plaintiffs' civil RICO claims to arbitration. Each of the claims arise from the Settlement Agreements and, therefore, are required to be submitted to arbitration. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("Having made the bargain to arbitrate, the party should be held to it . . . ."). We disagree with Plaintiffs' contention that arbitrating their "DC Based RICO Claim" proved to be an impossibility. Plaintiffs were fully aware of their right to appeal the arbitrator's dismissal of their "DC Based RICO Claim" in New York state court. In fact, Plaintiffs successfully obtained a New York Appellate Division order vacating the arbitrator's dismissal of their audit claims; because of this order, the arbitrator was required, on remand, to determine whether the signature bonus was a bribe or a bona fide transaction. Plaintiffs' "strategic" decision declining to challenge the dismissal of their "DC Based RICO Claim" in the New York state court appeal does not open the door to relitigate that claim in this forum.