# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2015

Lyle W. Cayce
Clerk

No. 14-10819

————

MURCHISON CAPITAL PARTNERS, L.P.; ROBERT MURCHISON; DR. ALAN HULL, MD; BACK NINE INVESTMENTS, LIMITED; DOUGLAS KELLER, et al.

> Plaintiffs - Appellants

v.

NUANCE COMMUNICATIONS, INCORPORATED,

> Defendant - Appellee

————

Appeal from the United States District Court
for the Northern District of Texas

————

Before JOLLY, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:[*]

This appeal arises from a labyrinthine procedural history resulting from a dispute over the merger agreement between two software companies, Nuance Communications and Vocada Inc. Appellants in this appeal are all former Vocada stockholders (for ease of reference, "Vocada"). Altogether, Vocada has voiced its claims against Nuance in front of a three-member arbitration panel,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10819

three district court judges, and now two panels of three judges of this court. In the litigation giving rise to this appeal, the district court dismissed Vocada's Texas Securities Act claim against Nuance, holding that res judicata barred Vocada's claim. As explained below, we AFFIRM the dismissal of Vocada's claim not because of res judicata, but instead because the claim falls within the parties' arbitration agreement and thus must be arbitrated.

## FACTS AND PROCEEDINGS[1]

### I.    Merger Agreement and Arbitration

Vocada developed and sold a medical software program called Veriphy. In 2007, Vocada began discussing the possibility of a merger with Nuance, a global computer software corporation with a rapidly expanding healthcare division. Nuance proposed a merger with a total of $45 million in potential merger consideration: an initial $20 million in cash or stock going to the Vocada stockholders, $4 million in cash or stock going to employee retention and management bonuses, and an additional $21 million in contingent "earnout consideration" conditioned on the Veriphy software hitting certain revenue targets and payable in three $7 million tranches over a three-year period.

Because Vocada's board members valued the company at no less than $40 million, it was crucial to Vocada's board that Nuance expend every effort

---

[1] We draw most of the following background from the factual allegations in Vocada's complaint, which we must accept as true at this stage in the litigation. *See Wood v. Moss*, 134 S. Ct. 2056, 2065 n.5 (2014). Ordinarily, we are confined to reviewing the allegations in the plaintiff's complaint, including its attachments, when reviewing a district court's ruling on a motion to dismiss under Rule 12(b)(6). *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). We "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.* Finally, because they are public records, we also take judicial notice of court pleadings in other cases. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.").

No. 14-10819

to maximize the earnout consideration post-closing. As the negotiations continued, Vocada therefore placed an overriding emphasis on Nuance's assurances that it would commit the necessary capital and resources to achieving the full earnout consideration. Responding to these concerns, Nuance sent a "side letter" to Vocada about the earnout consideration. In the side letter, Nuance stated it "intend[ed] to fully pursue the Veriphy business and consider[ed] the achievement of the earnout targets very important to the realization of the benefits of the transaction for Nuance." After discussing the merger agreement and the side letter at Vocada's final board meeting, Vocada's board voted to approve the merger, and the merger agreement closed on November 2, 2007. The merger agreement requires arbitration of "any . . . dispute relating to the Earnout Consideration."

In June 2009 and June 2010, Nuance sent "earnout notices" to Vocada's stockholder representative reporting that the Vocada stockholders were due no payments under the first and second $7 million tranches of the earnout consideration because none of the earnout targets had been met. In response, Vocada filed a demand for binding arbitration in December 2010 in New York. Vocada asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and statutory fraud under section 27.01 of the Texas Business and Commerce Code. For the fraud claim, Vocada alleged that Nuance made false representations about the steps Nuance would take to try to reach the earnout revenue targets. Vocada sought both benefit-of-the-bargain damages (that is, the $21 million earnout consideration) and out-of-pocket damages. In support of its request for out-of-pocket damages, Vocada contended that its business was worth more than the $24 million that the stockholders had received for the company, and it asked the arbitration panel

3

to award it the difference in value. The parties stipulated that all of the claims were arbitrable.

On October 5, 2012, after an eight-day arbitration hearing, a three-member arbitration panel concluded that Nuance fraudulently induced Vocada's board and stockholders to enter into the merger agreement by making material misrepresentations in the side letter. The arbitration panel also concluded, however, that Vocada was not entitled to recover damages on its statutory fraud claim because Nuance's misrepresentations did not significantly contribute to Vocada's inability to receive the earnout consideration. Even if Nuance had complied with its contractual promise to pursue revenue goals for the Veriphy software, the arbitration panel found that it was reasonably certain that Veriphy would not have achieved any of the three earnout thresholds identified in the merger agreement. As the arbitration panel elaborated in its findings of fact, Veriphy performed worse than expected, its deal pipeline was "substantially overstated," and demand for the product was limited. As a result, the arbitration panel concluded that "Vocada shall take nothing on its claims" and stated that "[t]his Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied."

## II.    Proceedings in the District Court

Having lost in the arbitration, Vocada filed two separate lawsuits in Texas state court: first, an application to vacate and remand the arbitration award; and second, a securities fraud claim under the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. art. 581-33. Nuance removed both of these actions to federal court. The remand action was assigned to District Judge Jorge Solis, and the securities fraud claim was assigned to District Judge Sam Lindsay.

In the remand action, Vocada argued that the arbitration panel had failed to rule on Vocada's request for out-of-pocket damages. Vocada therefore

requested that the district court remand the arbitration award to the arbitration panel for additional findings of fact and conclusions of law on the out-of-pocket remedy. The district court declined to vacate the award, but it nevertheless granted the request to remand so that the arbitration panel could clarify the award. Nuance appealed the district court's decision, but our court dismissed the appeal for lack of appellate jurisdiction. *See Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 760 F.3d 418, 419, 423 (5th Cir. 2014). As the parties reported at oral argument in this second appeal, the parties have fully briefed and argued the out-of-pocket damages issue in front of the arbitration panel on remand, and they are awaiting a decision from the arbitration panel.

Meanwhile, in the securities fraud action, Nuance moved to dismiss Vocada's claim. The district court granted the motion under Federal Rule of Civil Procedure 12(b)(6) and dismissed with prejudice Vocada's securities fraud claim as barred by res judicata. The district court also later denied Vocada's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Vocada appealed, and the issue of res judicata is before this court.

## STANDARD OF REVIEW

This court reviews de novo the res judicata effect of a prior judgment. *See Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013).

## DISCUSSION

"Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). "As a general matter, arbitral proceedings can have preclusive effect . . . ." *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) (emphasis omitted) (analyzing the collateral estoppel effect of a prior arbitration award); *see also Restatement (Second) of Judgments* § 84(1) (1982) ("[A] valid and final award by arbitration

has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court."). The party asserting that res judicata applies has the burden of proving that preclusion is appropriate. *See Memphis–Shelby Cnty. Airport Auth. v. Braniff Airways, Inc.* (*In re Braniff Airways, Inc.*), 783 F.2d 1283, 1289 (5th Cir. 1986). "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters*, 428 F.3d at 571.[2] On appeal, Vocada challenges the district court's holding only on the second and third res judicata elements: the "court of competent jurisdiction" element and the "final judgment on the merits" element. We address these two elements below in reverse order.

## I.     **Final Judgment on the Merits**

Vocada argues that the arbitration panel's award is not a final judgment on the merits. As primary support, it points to the order remanding the arbitration award to the arbitration panel. In response, Nuance argues both that Vocada waived this finality argument and that the remand order, in any event, does not undo the arbitration award's finality. The district court's

---

[2] At first glance, this court appears to apply federal res judicata rules even in diversity cases. *See Clark v. Amoco Prod. Co.*, 794 F.2d 967, 972 n.6 (5th Cir. 1986) (citing *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 243 & n.2 (5th Cir. 1983)). But "[t]he source of the law that governs the preclusion consequences of an arbitration award has not been much developed." 18B Charles Alan Wright et al., *Federal Practice & Procedure* § 4475.1 (2d ed.) ("In the end, it may prove wise to look to the law that governs the claim advanced in court, rather than the law governing the arbitration or the claim advanced in arbitration."); *see also Wolf v. Gruntal & Co.*, 45 F.3d 524, 527 n.3 (1st Cir. 1995). We need not decide this under-developed question of whether federal or state law controls—and if state law controls, whether New York or Texas law controls—because both New York and Texas preclusion law closely resemble federal law. *See FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 79 n.10 (1st Cir. 2011) (noting that New York preclusion law "closely resembles" federal preclusion law); *Flippin v. Wilson State Bank*, 780 S.W.2d 457, 459 (Tex. App. 1989) (noting that the federal and Texas standards for res judicata are "[s]trikingly similar").

opinion aligned with Nuance's position and underscored that the remand order, while it asked for clarification, did not vacate the arbitration award.

We make two preliminary observations about this element of the res judicata test. First, we note that this issue was preserved for appellate review. We agree with Nuance that, in Vocada's opposition to Nuance's motion to dismiss, Vocada failed to raise the argument that the arbitration award is not a final judgment on the merits. Vocada raised this non-finality argument for the first time in its Rule 59(e) motion. Ordinarily, this would mean that Vocada forfeited this finality argument. *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014) ("This court will typically not consider an issue or a new argument raised for the first time in a motion for reconsideration in the district court."); *Kohler v. Englade*, 470 F.3d 1104, 1114 (5th Cir. 2006) (holding that an argument raised for the first time in a Rule 59(e) motion is waived on appeal). However, we have held that a new argument raised in a Rule 59(e) motion is preserved for appeal if the district court decides to address the merits of that argument, as the district court did in this case. *See Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 287 (5th Cir. 2009) ("[Appellant] raised this . . . argument for the first time in its Rule 59(e) motion for reconsideration. Because the district court considered the merits of the Rule 59(e) motion and still granted summary judgment, we review the . . . issue under the familiar summary-judgment standard of *de novo*."); *see also Gerhartz v. Richert*, 779 F.3d 682, 686–87 & n.9 (7th Cir. 2015) (citing cases from the Second, Fourth, Fifth, Seventh, Tenth, and D.C. Circuits for the proposition that "[a]lthough an issue presented for the first time in a Rule 59(e) motion generally is not timely raised, such an issue is subject to appellate review if the district court exercises its discretion to consider the issue on the merits" (citations and internal quotation marks omitted)); *cf. Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1087 (5th Cir. 1996) ("A district court has discretion

to consider new theories raised for the first time in a post-trial brief, and an issue first presented to the district court in a post-trial brief is properly raised below when the district court exercises its discretion to consider the issue." (citations omitted)).

Second, we note that the district court mistakenly held that it had discretion in ruling on the legal issue of arbitral finality. The case the district court cited in support of its exercise of discretion to review the arbitration panel award dealt with offensive collateral estoppel (*issue* preclusion), not res judicata (*claim* preclusion). *See Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991) ("[T]he application of [offensive] collateral estoppel from arbitral findings is a matter within the broad discretion of the district court . . . ."). That discretion, however, does not extend to res judicata (*claim* preclusion) analysis,[3] which we review de novo as a question of law. *Compare Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 549 (5th Cir. 2013) ("Our review is for an abuse of discretion . . . when considering a district court's evaluation of whether special circumstances exist to justify offensive collateral estoppel."), *with Comer*, 718 F.3d at 466 ("The res judicata effect of a prior judgment is a question of law that we review *de novo*." (citation and internal quotation marks omitted)). The district court's exercise of discretion to find

---

[3] If the procedural timeline of this case were different, it is possible that issue preclusion would have been the relevant preclusion doctrine. For example, if the arbitration panel had issued a ruling on out-of-pocket damages before Vocada had filed its securities fraud claim in the district court, that damages ruling might have triggered issue preclusion in the district court. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) ("[T]he general rule [of issue preclusion] is that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (alteration, citation, and internal quotation marks omitted)). Indeed, given the remand to the arbitration panel, Judge Lindsey could have stayed the proceedings on the securities fraud claim pending the arbitration panel's decision on out-of-pocket damages. *See* 9 U.S.C. § 3.

finality and decide Vocada's securities fraud claim is complicated by the mistaken premise that claim preclusion can be applied on a discretionary basis based on judicial economy.

Finality for purposes of res judicata closely resembles finality for appellate review. *See J.R. Clearwater Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 (5th Cir. 1996); *see also Restatement (Second) of Judgments* § 13, cmt. b ("[A] judgment will ordinarily be considered final . . . if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court . . . ."). "A 'final decision' is one by which a district court disassociates itself from a case." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) (citation and internal quotation marks omitted). Thus, "[a]n order is final . . . when it ends the litigation and leaves nothing for the court to do but execute the judgment." *Elizondo v. Green*, 671 F.3d 506, 509 (5th Cir. 2012).

With this standard in mind, it is evident that this issue is difficult to resolve. Both parties raise colorable, yet competing arguments supporting finality and non-finality. On the one hand, as the district court emphasized, the language of the arbitration award itself suggests that the award is final. *See Pujol v. Shearson/Am. Express, Inc.*, 829 F.2d 1201, 1206 (1st Cir. 1987) (holding that the arbitrators' decision had res judicata effect, even when the arbitrators failed to make detailed supporting findings, when "[t]he decision firmly stated that it represented a 'full and final settlement' of the matter as a whole"). The award states that "Vocada shall take nothing on its claims" and that the award "is in full settlement of all claims and counterclaims submitted to" the arbitration panel. The award further clarifies that "[a]ll claims not expressly granted herein are hereby denied." And although the arbitration panel did not explicitly discuss out-of-pocket damages, it did state that "no compensatory damages are awarded." The terms of the merger agreement

further suggest that the arbitration award is final. The agreement states that the arbitration panel's decision is "final, binding, and conclusive upon the parties," and the agreement does not contemplate appeals of the arbitration decision. In sum, reading the award and the arbitration agreement together, the award—which has not been vacated[4]—may be final: the arbitration panel decided all claims presented to it, that decision is "final, binding, and conclusive," and there is no opportunity for appeal.

On the other hand, an arbitration award is only "final and binding" when it is "made in accordance with all legal requirements." 2 *Domke on Commercial Arbitration* § 36:2. The parties' merger agreement required the arbitrators to issue a written decision "supported by written findings of fact and conclusions, which shall set forth the award, judgment, decree or order awarded by the arbitrator(s)." As the remand order explained, however, the arbitration panel did not provide findings of fact or conclusions of law allowing the district court "to ascertain the reason the Panel did not award out-of-pocket damages." The earlier district court therefore remanded so that the arbitration panel could "provide sufficient findings of fact and conclusions of law on the issue of out-of-pocket damages, which was submitted to it but *not resolved*." (emphasis added). Indeed, on remand to the arbitration panel, the parties report that they have submitted extensive briefing and oral argument, suggesting that there was

---

[4] It is possible that the district court in the remand action erred when it declined to vacate the arbitration award after holding that the arbitration panel exceeded its powers. The Federal Arbitration Act allows district courts to vacate arbitration awards "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). This issue, however, is not a question presented to this panel and, more importantly, it is not an issue that this panel would have appellate jurisdiction to review. *See Murchison Capital Partners, L.P.*, 760 F.3d at 419, 423 (holding that an order remanding an arbitration award is not a final, appealable order when the order does not also vacate the arbitation award). Therefore, for purposes of this appeal, the arbitration award is still in effect because it has not been vacated.

No. 14-10819

more for the arbitration panel to do than simply execute the previous arbitration award. This scenario leaves open the possibility that the arbitration panel will issue a supplemental decision on out-of-pocket damages and risks that there could be piecemeal determinations on this fraud issue. This possibility undermines the argument that the arbitration award is final.

Ultimately, because neither party has identified caselaw compelling a clear resolution of this issue, we will not chart a new path at this intersection of the law on arbitration and res judicata. More importantly, because we resolve this appeal on alternative grounds that we discuss below, we leave the resolution of this complex finality issue for a future case.

## II.    Court of Competent Jurisdiction

Vocada argues that res judicata cannot apply because the arbitration panel was not a "court of competent jurisdiction." Although res judicata generally "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit," *Test Masters*, 428 F.3d at 571, res judicata does not apply if a claim "could not have been brought," *Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1989). Thus, "[i]f the court rendering judgment lacked subject-matter jurisdiction over a claim or if the procedural rules of the court made it impossible to raise a claim, then it is not precluded." *Id.* at 558–59; *see also Restatement (Second) of Judgments* § 26(1)(c)).[5] As applied to arbitration, this rule means that the scope of an arbitration agreement may

---

[5] The *Restatement* states:
[Claim preclusion] does not apply to extinguish [a] claim [if] [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.
*Restatement (Second) of Judgments* § 26(1)(c).

11

limit the preclusive effect of an arbitration award because "the parties are under no obligation to submit themselves to arbitration with broader effects than may be agreed upon." *Restatement (Second) of Judgments* § 84, cmt. h.

An arbitration panel's authority derives solely from, and is limited by, the agreement between the parties. *See BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788 (5th Cir. 2015) ("[T]he power and authority of arbitrators in an arbitration proceeding is dependent on the provisions under which the arbitrators were appointed." (citation and internal quotation marks omitted)). The arbitration panel's jurisdiction is therefore limited to (1) claims covered by the parties' arbitration agreement, and (2) claims that the parties agreed to arbitrate by entering into a joint arbitral submission. *See Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 354 (5th Cir. 2004) ("It is well-settled that the arbitrator's jurisdiction is defined by both the contract containing the arbitration clause and the submission agreement. If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, we look both to the contract *and* the scope of the submissions to the arbitrator to determine the arbitrator's authority."), *overruled on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–86 (2008); *see also Wolf*, 45 F.3d at 528–30 (applying New York law). Transposing this rule of arbitrability to the res judicata doctrine, a claim that was not arbitrable—either because it was not within the scope of the arbitration agreement or because the parties did not enter into a stipulation to arbitrate it—cannot be barred by res judicata because the arbitration panel would not have been a "court of competent jurisdiction." *See Wolf*, 45 F.3d at 528.

Nuance argues both that the securities fraud claim falls within the scope of the arbitration clause because it relates to the earnout consideration and also that the parties agreed to arbitrate the claim by stipulation because the securities fraud claim is identical to the fraudulent inducement claim. In other

words, Nuance argues that the securities fraud claim was not only *arbitrable*, but was also actually *arbitrated*. Because we are persuaded by Nuance's first argument, we need not reach the second.

Turning to the text of the arbitration clause, this court applies the law that the parties agreed would govern the interpretation and construction of the clause. *See Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004); *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.*, 343 F.3d 355, 361 (5th Cir. 2003). Both parties acknowledge that New York state law—the law governing the entire merger agreement—applies here.

Under New York law, "[t]he threshold question of whether a matter is subject to arbitration must be determined from the terms of the agreement containing the arbitration clause." *In re A.F.C.O. Metals, Inc.*, 661 N.E.2d 1365, 1367 (N.Y. 1995). Arbitration clauses are either broad or narrow. *See Gerling Global Reinsurance Corp. v. Home Ins. Co.*, 302 A.D.2d 118, 126 (N.Y. App. Div. 2002). Only broad arbitration clauses create a presumption of arbitrability. *See Domansky v. Little*, 2 A.D.3d 132, 133 (N.Y. App. Div. 2003) (per curiam). "Where the parties have agreed generally to submit to arbitration all disputes arising out of the contract or any dispute relating to the meaning and interpretation of the underlying agreement, they have adopted a broad arbitration clause." *Information Scis., Inc. v. Mohawk Data Sci. Corp.*, 374 N.E.2d 624, 625 (N.Y. 1978) (per curiam). Thus, when an arbitration clause is broad, "the scope of the arbitration clause and the scope of the underlying agreement are identical." *Nationwide Gen. Ins. Co. v. Investors Ins. Co. of Am.*, 332 N.E.2d 333, 335 (N.Y. 1975).

By contrast, narrow arbitration clauses require arbitration only if the dispute is related to the class of claims identified in the clause. *See Gerling Global Reinsurance Corp.*, 302 A.D.2d at 126. "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Id.*

(quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)) (alteration and internal quotation marks omitted). Regardless of whether an arbitration clause is broad or narrow, arbitration is strongly favored under New York law and any doubts about whether an issue is arbitrable should be resolved in favor of arbitration. *See Louis Dreyfus Negoce S.A.*, 252 F.3d at 223; *see also Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884, 889–90 (N.Y. 1997).

In their merger agreement, Vocada and Nuance agreed to arbitrate "any . . . dispute relating to the Earnout Consideration." This clause is narrow. It does not require arbitration of all disputes arising out of the merger agreement; instead, it requires arbitration only of disputes related to the earnout consideration. *See State v. Philip Morris Inc.*, 869 N.E.2d 636, 639–40 (N.Y. 2007) (observing that an arbitration clause that covers "any dispute . . . relating to" an auditor's calculations and determinations is "misleadingly called broad" (alterations and emphasis omitted)); *Gerling Global Reinsurance Corp.*, 302 A.D.2d at 119, 126 (holding that an arbitration clause that covered any "irreconcilable difference of opinion . . . as to the interpretation of this contract" was a narrow clause); *We're Assocs., Inc. v. Int'l Bus. Machines Corp.*, 220 A.D.2d 752, 753 (N.Y. App. Div. 1995) (per curiam) (holding that an arbitration clause was narrow when it "called for arbitration only of disputes relating to certain payments made under the lease").

Vocada argues that the parties' narrow arbitration clause refers only to conflicts that arose in the process of calculating, distributing, and notifying Vocada about the earnout consideration that was due. Vocada's interpretation is not supported by the clause. Although the arbitration clause as a whole is narrow, the "relates to" language is broad. The clause does not require that the remedy sought in arbitration *be* the earnout consideration or that the claim relate to how the earnout consideration is calculated or distributed. The clause

states more broadly that arbitration is required for "*any . . . dispute* relating to the Earnout Consideration." (emphasis added).

The New York Court of Appeals interpreted a similar arbitration clause in *State v. Philip Morris Inc.*, 869 N.E.2d 636. There, the parties' master service agreement compelled arbitration of "*any* dispute, controversy or claim arising out of or *relating to* calculations performed by, or any determinations made by, the Independent Auditor." *Id.* at 639 (alterations omitted). The court explained the "expansive words" "any" and "relating to" made clear that "all claims that have a connection with the Independent Auditor's calculations and determinations are arbitrable." *Id.* The court then rejected the argument that the clause limited arbitration to "*review* of calculations performed or decisions reached by the Independent Auditor." *Id.*

Likewise here, the arbitration clause focuses on the "dispute," not the remedy. And as Nuance convincingly argues, and as the district court held, this securities fraud "dispute" is arbitrable because it "relat[es] to" the representations that Nuance made about how to achieve the earnout consideration. This "dispute" is therefore arbitrable because it "relat[es] to the Earnout Consideration."

This analysis compels two conclusions. First, for purposes of res judicata, the arbitration panel was a court of competent jurisdiction for the securities fraud claim. Second, this first conclusion then means that the only proper forum for this claim is arbitration. *Cf. JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (noting that, when ruling on a motion to compel arbitration, the court must determine "whether the dispute in question falls within the scope of [an] arbitration agreement" (citation and internal quotation marks omitted)). Vocada's securities fraud claim falls within the scope of the arbitration clause and therefore must be submitted to arbitration. Thus, we put to one side a complex finality issue for purposes of

res judicata, and instead we affirm the dismissal of Vocada's securities fraud claim because it must be pursued, if at all, in arbitration. *See Grynberg v. BP, P.L.C.*, 527 F. App'x 278, 283 n.6 (5th Cir. 2013) (per curiam) ("We note . . . that even if we concluded that *res judicata* were not applicable here, we would remand Plaintiffs' . . . claims to arbitration [because] [e]ach of the claims arise from the Settlement Agreements and, therefore, are required to be submitted to arbitration."); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("Having made the bargain to arbitrate, the party should be held to it . . . .").

In that regard, we emphasize that our holding does not compel the parties to arbitrate this dispute. We simply affirm the dismissal of Vocada's securities fraud claim, albeit on the alternative ground that Nuance would have been entitled to prevail on a Rule 12(b)(1) or 12(b)(3) motion to dismiss the case because the dispute is covered by the arbitration clause. The parties' arbitration agreement included a forum selection clause, requiring all arbitration to be held in New York City. "When an arbitration clause in a contract includes a forum selection clause, only the district court in that forum can issue [an] order compelling arbitration." *See Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) (citation and internal quotation marks omitted); *see also* 9 U.S.C. § 4 (instructing that the hearing and proceedings on a motion to compel arbitration "shall be within the district in which the petition for an order directing such arbitration is filed"). "When a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court." *Haber*, 578 F.3d at 558; *see also Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010) (observing that the Fifth Circuit has not resolved whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for motions to dismiss based on an arbitration clause); *Lim v. Offshore*

*Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) (recognizing circuit agreement that a motion to dismiss based on an arbitration clause is proper under Rule 12(b)(3)). Here, the district court dismissed Vocada's securities fraud claim but did not compel arbitration. That was the correct disposition, and we therefore affirm the dismissal of Vocada's claim on the ground that Vocada must arbitrate the claim if it wishes to continue pursuing it.

Finally, we recognize that, in addition to res judicata, Nuance's Rule 12 motion only sought dismissal on limitations grounds and for improper venue based on the forum selection clause in the merger agreement. Nuance did not move to dismiss based on the arbitration clause. Although we can affirm on an alternative ground, generally we are limited to affirming on an alternative ground that one of the parties urged below. *See Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013). However, our restraint underlying this approach— that the parties have had an opportunity to brief the issue at least at some point during the litigation before we rule on that basis—is not implicated here because the arbitrability question is part of the "court of competent jurisdiction" element of the claim-preclusion analysis that the parties have fully litigated. Moreover, Nuance raised a general forum-selection-clause argument below, and given our finding on arbitrability, we conclude that a Texas district court is not a proper forum for Vocada's securities fraud claim.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court dismissing Vocada's securities fraud claim.